**FIRETREE, LTD., Petitioner**

v.

**DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 30, 2010.

Decided Sept. 1, 2010.

Maria Casey, Williamsport, for petitioner.

Vincent R. Mazeski, Asst. Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for respondent.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Firetree, LTD., (Firetree) petitions for review of the April 22, 2010, order of the Department of Corrections (Department), which dismissed Firetree's bid protest as untimely. We affirm.

The Department issued a Request for Proposal (RFP) for Community Contract Facility Services, i.e., for community-based facilities to house offenders being released into communities in three regions throughout the Commonwealth. Firetree responded to the RFP, proposing facilities in Beaverton and Pottsville for Region 2. On February 16, 2010, the Department notified Firetree by letter and email that its proposals were not selected because Firetree's point score on the technical portion of the RFP was not high enough to justify

selection. The Department also informed Firetree that the Department awarded the Region 2 contract to The Program for Female Offenders, Inc. and Gaudenzia, Inc. On February 17, 2010, those awards were posted on the Department of General Services (DGS) website.[1] (Findings of Fact, Nos. 1–5; R.R. at 21a, 69a–70a, 102a.)

In an e-mail to the Department on February 16, 2010, Firetree requested a de-briefing, which was held on February 23, 2010. Firetree then filed a bid protest by letter dated February 24, 2010, which the Department received on February 25, 2010. In the letter, Firetree asserted it was told at the de-briefing that: (1) the Beaverton and Pottsville facilities were deficient with respect to location and the ability to meet the 120–day startup requirement;[2] and (2) Firetree did not receive 70% of the highest technical score, a requirement for further consideration of a bid.[3] Firetree challenged the Department's assessment of Firetree's proposed facilities and claimed that, at the de-brief-

ing, the Department stated that "there was no scoring system for this percentage [70%]." (Findings of Fact, Nos. 7–8, 10–20.)

The Contracting Officer for the Department filed a response to the bid protest, stating that Firetree's protest was untimely because it was not filed with the Department within seven days of February 16, 2010, the date Firetree learned of its non-selection.[4] Firetree replied that it could not file a protest until it knew the basis for the Department's rejection of its bid, and it did not learn that until the February 23, 2010, de-briefing. (Findings of Fact, Nos. 21–22, 27.)

After considering the matter, the Department dismissed the protest as untimely. In doing so, the Department reasoned that Firetree knew on February 16, 2010, that its point score on the technical portion of the RFP was not high enough for the bid to merit further consideration. The Department stated that this was sufficient

---

1. We note that the awards were posted on a webpage entitled "PA eMarketplace," which is accessed through the DGS website. (R.R. at 102a.)

2. Section III–4(a) of the RFP sets forth the pertinent technical criteria for selection as follows:

   *Location*
   Is the geographic location of the contractor's program proximate to the needs of the Department of Corrections? Is public transportation accessible? Are employment opportunities available?

   . . . .

   *Start–Up*
   Does the contractor have a viable and reasonable start-up plan to meet the 120–day requirement? Does the contractor have a specific building with approved zoning for this program? Is there community support?
   (R.R. at 39a–40a.)

3. Section III–4 of the RFP states, "In order for a proposal to be considered for selection

for best and final offers or selection for contract negotiations, the total score for the technical submittal of the proposal must be greater than or equal to 70% of the highest scoring technical submittal." (R.R. at 39a.)

4. Section I–28 of the RFP provides, in pertinent part, as follows:

   RFP Protest Procedure. . . . The RFP Protest Procedure is on the DGS website. . . . Offerors may file a protest within **seven** days after the protesting Offeror knew or should have known of the facts giving rise to the protest, but in no event may an Offeror file a protest later than **seven** days after the date the notice of award of the contract is posted on the DGS website. The date of filing is the date of receipt of the protest.
   (R.R. at 29a) (emphasis in original). The protest procedures on the DGS website are in agreement with Section I–28 of the RFP. (*See* R.R. at 3a.)

information to file a bid protest and that Firetree could have supplemented the protest after the de-briefing. (Final Determination at 7–8.) Firetree now petitions this court for review.[5]

Firetree argues that the Department erred in concluding that its protest was untimely. We disagree.

Section 1711.1(b) of the Commonwealth Procurement Code (Code) provides, in pertinent part, as follows:

> Filing of protest.—If the protestant is a bidder or offeror or a prospective contractor, the protest shall be filed with the head of the purchasing agency within seven days after the aggrieved bidder or offeror or prospective contractor knew or should have known of the facts giving rise to the protest **except that in no event may a protest be filed later than seven days after the date the contract was awarded**.... If a bidder or offeror ... or a prospective contractor fails to file a protest or files an **untimely protest,** the bidder or offeror ... or the prospective contractor shall be deemed to have **waived** its right to protest the ... award of the contract in any forum. Untimely filed protests shall be disregarded by the purchasing agency.

62 Pa.C.S. § 1711.1(b) (emphasis added). Section I–28 of the RFP states that "in no event may an Offeror file a protest later than **seven** days after the date the notice of award of the contract is posted on the DGS website.[6] The date of filing is the date of receipt of the protest."[7] (R.R. at 29a) (emphasis in original).

Here, the Department posted the Region 2 contract award on the DGS website on February 17, 2010, but the Department did not receive Firetree's protest until February 25, 2010, eight days later. Thus, Firetree's bid protest was untimely. In arguing to the contrary, Firetree asserts that it filed its protest on February 24, 2010. (Firetree's brief at 13.) However, that argument ignores the RFP provision stating that the filing date of a protest is the date of receipt, not the date of mailing. It also ignores the regulation at 1 Pa.Code § 31.11, which states that the date an agency receives a document filed pursuant to statute is determinative of the date of filing.[8]

Accordingly, we affirm.

### ORDER

AND NOW, this 1st day of September, 2010, the order of the Department of Cor-

---

5. This court shall affirm the determination of the Department unless it finds from the record that the determination is arbitrary and capricious, an abuse of discretion or is contrary to law. Section 1711.1(i) of the Commonwealth Procurement Code, 62 Pa.C.S. § 1711.1(i).

6. We recognize that section 1711.1(b) of the Code requires the filing of a protest no later than seven days after the date of the contract award, not the date the award is posted on the DGS website. However, because section I–28 of the RFP may have misled bidders, we shall use the date that the awards were posted on the DGS website in determining whether Firetree's protest was untimely.

7. Under 1 Pa.Code § 31.11, documents filed under a provision of law shall be **received** for filing by an agency **within the time limits for the filing,** so that the **date of receipt** by the agency, and not the date of deposit in the mail, **is determinative.**

8. Because of our disposition of this issue, we need not address whether Firetree filed its protest within seven days after it knew or should have known the facts giving rise to the protest. Even if we were to address the issue, we would determine that, to meet the seven-day requirement in the statute, a disappointed bidder should not wait for a de-briefing before filing a protest.

rections, dated April 22, 2010, is hereby affirmed.