# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Bureau Veritas North America, Inc., | : |
| | : |
| Petitioner | : |
| | : |
| v. | : No. 99 C.D. 2015 |
| | : Argued:  October 5, 2015 |
| Department of Transportation, | : |
| | : |
| Respondent | : |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY
SENIOR JUDGE COLINS                                      FILED:  November 3, 2015

Bureau Veritas North America, Inc. (BV) petitions for review of a final determination of the Secretary (Secretary) of the Department of Transportation (DOT) denying as untimely BV's protest concerning four inspection contracts on which it had submitted a Statement of Interest (SOI).  For the reasons that follow, we conclude that the Secretary correctly held that the protest was not filed within the seven-day time limit imposed by Section 1711.1(b) of the Commonwealth Procurement Code (Procurement Code), 62 Pa. C.S. § 1711.1(b), but reverse the Secretary's rejection of BV's request that the protest be heard *nunc pro tunc* and remand this matter to the Secretary to address the protest on the merits.

In July 2014, DOT advertised four fabricated structural steel plant inspection contracts.  (Record Item (R. Item) 10, Final Determination at 1; R. Item 6, Reproduced Record (R.R.) at 21a-36a.)  Five firms, including BV, submitted

SOI in response to this advertisement. (R. Item 10, Final Determination at 2; R. Item 6 Advertisement for Inspection Contracts, R.R. at 56a.) On November 13, 2014, DOT published its final rankings of the five firms that submitted SOI. (R. Item 10, Final Determination at 2; R. Item 6 Bracken Certification, R.R. at 56a ¶¶10-11.) These final rankings ranked BV as fifth overall and second with respect to each of the four contracts. (R. Item 10, Final Determination at 2; R. Item 6 BV Final Ranking for Agreement E03236, Bracken Certification & Harter Certification, R.R. at 50a-53a, 56a ¶9, 58a ¶2.)

BV learned of the final rankings when they were published on November 13, 2014. (R. Item 9 BV Reply in Support of Protest & Rzonca Certification, R.R. at 81a, 89a ¶2.) On November 14, 2014 in response to an inquiry from BV, a DOT Contract & Consultant Agreement Engineer sent BV the following email:

> I spoke with Michele Harter from Central Office about the four referenced agreements that your firm was ranked #2. There is no formal bid protest process for consultant agreements. However, you can request a debriefing meeting be scheduled with the selection team. Since these are all central office agreements and not District 11, you can email or call Mr. Joseph Bracken … and request a meeting. If I can assist you any further, please do not hesitate to call me.

(R. Item 9 11/14/14 DOT email, R.R. at 95a.) BV later that day sent the following response to DOT:

> Thank you for your e-mail.
> By copy, I am forwarding this on to appropriate BVNA staff.
> Also, thanks again for directing my inquiry to the other PennDOT representatives and their assistance in provided [*sic*] us with direction to the Pennsylvania Procurement Handbook and Title 62 - Procurement - Commonwealth

Procurement Code. This information is also being reviewed for applicability to this situation.

BVNA had previously contacted Mr. Bracken and there is a Debriefing meeting scheduled for next Tuesday.

(R. Item 9 11/14/14 BV email, R.R. at 94a.) On November 18, 2014, DOT conducted a debriefing meeting with BV. (R. Item 10, Final Determination at 2; R. Item 6 Bracken Certification, R.R. at 56a ¶13; R. Item 9 Rzonca Certification, R.R. at 89a ¶4.)

BV sent a protest concerning the four contracts to DOT by regular mail and email on November 20, 2014, the seventh day after the publication of the final rankings. (R. Item 3, BV Protest, R.R. at 9a-10a; R. Item 9 Rzonca Certification, R.R. at 89a-90a ¶¶5, 7.) BV's email of its protest was sent at 6:33 p.m. and was rejected by DOT's computer server. (R. Item 10, Final Determination at 2; R. Item 9 Rzonca Certification & Email Delivery Failure Report, R.R. at 90a ¶¶7-8, 92a.) DOT's Delivery Failure Report notifying BV of the rejection did not explain the reason or give any information on how the email could be successfully resent, stating only:

**Delivery Failure Report**
**Your message:** Protest of Procurement Decision and Request for Reconsideration- Bureau Veritas
**was not delivered to:** Ra-penndotexecutiveoffices@pa.gov
**because:** 5.x.0 - Message bounced by administrator (delivery attempts: 0)
**What should you do?**
You can resend the undeliverable document to the recipients listed above by choosing the Resend button or the Resend command on the Actions menu.
Once you have resent the document you may delete this Delivery Failure Report.
If resending the document is not successful you will receive a new failure report.

> Unless you receive other Delivery Failure Reports, the document was successfully delivered to all other recipients.
> Routing path
> MTAAmerica2/USA/VERITAS,
> HUB2America1/USA/VERITAS,
> AMEMAIL15/SRV/VERITAS

(R. Item 9 Email Delivery Failure Report, R.R. at 92a) (emphasis in original).

On November 21, 2014, BV learned that the DOT server rejected the email because it was in a .ZIP file format. (R. Item 9 Rzonca Certification, R.R. at 90a ¶8.) BV promptly changed the file format and successfully resent the protest to DOT by email. (*Id.*) DOT received and docketed the protest on November 21, 2014, eight days after the November 13, 2014 publication of the final rankings. (R. Item 10, Final Determination at 2; R. Item 6 Bracken Certification, R.R. at 56a ¶14.) BV was not aware prior to November 21, 2014 that DOT's server rejects .ZIP file attachments. (R. Item 9 Rzonca Certification, R.R. at 90a ¶9.)

The Deputy Secretary of DOT issued a Memorandum on December 8, 2014, rejecting BV's protest both as untimely and on the merits, and lifting the stay of procurement on the grounds that the protest was without merit and that proceeding without delay was necessary because the existing inspection contracts would expire at the end of December 2014. (R. Item 10, Final Determination at 3; R. Item 7, Memorandum of Deputy Secretary, R.R. at 12a-13a.) On December 8, 2014, DOT also filed its response to the protest, asserting that the protest was both untimely and without merit. (R. Item 10, Final Determination at 3; R. Item 6 DOT Response to Protest, R.R. at 14a-19a.) BV in its Reply in Support of its Protest argued both that its protest was timely and that it should prevail on the merits of the protest. (R. Item 10, Final Determination at 3; R. Item 9 BV Reply in Support of Protest, R.R. at 80a-88a.) With respect to timeliness, BV argued that the Procurement Code's seven-day deadline did not begin to run on November 13,

2014, and that its email protest was filed on November 20, 2014, and also requested that it be granted leave to file the protest *nunc pro tunc* if the filing was not within the Procurement Code deadline. (R. Item 9 BV Reply in Support of Protest, R.R. at 80a-82a.)

On January 16, 2015, the Secretary issued a final determination dismissing BV's protest as untimely. The Secretary concluded that the seven-day deadline for filing a protest under the Procurement Code expired on November 20, 2014 and that BV's protest was not filed until November 21, 2014. (R. Item 10, Final Determination at 4-5.) The Secretary denied BV's request that its protest be allowed *nunc pro tunc* on the ground that the Procurement Code does not permit *nunc pro tunc* filing of protests and did not address whether BV had shown that it satisfied the standards for *nunc pro tunc* filing. (*Id.* at 4 n.4.) The Secretary did not address the merits of the protest. BV timely appealed the Secretary's final determination to this Court.[1]

The issues in this appeal concern only the timeliness of BV's protest, not the merits of the protest. BV asserts three arguments: 1) that the seven-day period for filing a protest did not begin to run on November 13, 2014, when the final rankings for the inspection contracts were published; 2) that the unsuccessful emailing of its protest on November 20, 2014 constituted filing of the protest; and 3) that its protest should have been allowed *nunc pro tunc*.[2] We reject BV's first

---

[1] This Court hears Procurement Code protest appeals without a jury, on the record certified by the agency, and must affirm the determination of the agency unless the determination is arbitrary and capricious, an abuse of discretion or contrary to law. 62 Pa. C.S. § 1711.1(i); *Omnicare, Inc. v. Department of Public Welfare*, 68 A.3d 20, 23 n.3 (Pa. Cmwlth. 2013).

[2] BV has also filed an application requesting that this Court take judicial notice of DOT Publication 93, Policies and Procedures for the Administration of Consultant Agreements (Publication 93). We deny this application on the grounds that BV has not shown that **(Footnote continued on next page…)**

5

two arguments, but conclude that BV has shown grounds for *nunc pro tunc* relief and that the Secretary therefore erred in not addressing the merits of its protest.

Section 1711.1(b) of the Procurement Code imposes the following time limitation on the filing of protests:

> If the protestant is a bidder or offeror or a prospective contractor, the protest shall be filed with the head of the purchasing agency within seven days after the aggrieved bidder or offeror or prospective contractor knew or should have known of the facts giving rise to the protest except that in no event may a protest be filed later than seven days after the date the contract was awarded.

62 Pa. C.S. § 1711.1(b) (emphasis added). Failure to file a protest before expiration of this seven-day deadline bars consideration of the protest. *Id.* (party who "fails to file a protest or files an untimely protest … shall be deemed to have waived its right to protest the solicitation or award of the contract in any forum;" "[u]ntimely filed protests shall be disregarded by the purchasing agency"); *Janeway Truck & Trailer Recovery v. Pennsylvania Turnpike Commission*, 16 A.3d 551, 553 (Pa. Cmwlth. 2011) (courts "must strictly apply the deadlines in the Code"); *Firetree, Ltd. v. Department of Corrections*, 3 A.3d 762, 764 (Pa. Cmwlth. 2010) (protest filed one day late is barred).

BV asserts that the period for filing its protest could not begin to run on November 13, 2014 because the final rankings did not constitute an award of

---

**(continued…)**
Publication 93 has any relevance to this appeal. BV does not point to anything in Publication 93 that affects the deadline or manner for filing a protest or the timeliness of BV's protest. Nor does BV assert that it relied on anything in Publication 93 in the filing method or timing of its protest. Rather, BV appears to claim that Publication 93 recommends comprehensive rankings and that DOT failed to comply with Publication 93. (Application for Judicial Notice at ¶¶24, 30-31.) Those are merits issues not before the Court in this appeal.

the contracts. This argument is without merit. A protest is barred as untimely if it is filed more than seven days after the disappointed offeror or bidder knew or had notice of the grounds for the protest, regardless of when the contract was awarded and even if the protest was filed within seven days of the contract award. *JPay, Inc. v. Department of Corrections*, 89 A.3d 756, 764-65 (Pa. Cmwlth. 2014); *Collinson, Inc. v. Department of Transportation*, 959 A.2d 480, 484 (Pa. Cmwlth. 2008); *Cummins v. Department of Transportation*, 877 A.2d 550, 553-55 (Pa. Cmwlth. 2005). Nothing in *Omnicare, Inc. v. Department of Public Welfare*, 68 A.3d 20 (Pa. Cmwlth. 2013), relied on by BV, suggests that a contract award is required for the seven-day Procurement Code time period to run. Although the protest in *Omnicare* was filed long after the rankings of the bidders, this Court held that the protest was timely not because an award of the contract was essential to the protest, but because the information on which the protest was based was not disclosed until the contract was posted online. *Id*. at 25-26.

Here, BV knew or should have known of the facts giving rise to its protest when the final rankings were published by DOT on November 13, 2014. BV knew of those rankings on that date. (R. Item 9 BV Reply in Support of Protest at 2, R.R. at 81a.) BV's protest was based on the information in the rankings and its own pre-existing knowledge. Four of the five items listed in BV's protest as bases to set aside DOT's action refer solely to the published rankings and information already known to BV concerning its performance on prior DOT contracts and the past evaluations it has received from DOT on those other contracts. (R. Item 3, BV Protest, R.R. at 9a-10a ¶¶1-2, 4-5.)[3] The lone reference

---

[3] BV stated the following as the grounds for its protest:

    1. Despite supplying PennDOT a service with a performance that has always been rated as at least "excelling" (8-9 out of 10), BV received a numerical ranking

**(Footnote continued on next page…)**

7

in the protest to information obtained later, at the November 18, 2014 debriefing, concerns DOT's underlying opinion concerning BV's past performance, not information concerning the other firms or their SOI or criteria used by DOT in the rankings. (*Id.*, R.R. at 9a ¶3.) The fact that a debriefing occurred and additional information was obtained in that debriefing does not delay the seven-day period for filing a protest. *Firetree, Ltd.*, 3 A.3d at 764 n.8 (in determining when the seven days from notice of facts giving rise to a protest begins to run, "a disappointed bidder should not wait for a de-briefing before filing a protest"). Moreover, BV in its arguments to the Secretary characterized the protest as based on "the reasons for the rankings published by the Department's own website" and did not assert as a basis for the protest any fact learned by BV at the debriefing or at any time after

---

**(continued…)**

> tabulation less than that of a firm with no direct Fabricated Structural Steel Plant Inspection experience with PennDOT;
>
> 2. The "Ranking Reasons" as posted in EQMS [*sic*] include: a) information garnered from outside the submitted SOI, b) incorrect information, c) a comparatively understated characterization of BV's demonstrated credentials, and d) a characterization of past performance that is inconsistent with PennDOT's documented evaluations;
>
> 3. During an 11/19/14 Debriefing Meeting, PennDOT staff informed BV that there are concerns with aspects of BV's current level of service to PennDOT. We believe those concerns impacted the evaluation of our SOI. This directly contradicts the Selection Criteria that specifies [*sic*] that "the final ranking will be established directly from the statements of interest".
>
> 4. Furthermore, the weight of any such concerns would be inconsistent with the highly-rated formal performance reviews that BV has received for our current performance;
>
> 5. By not selecting BV, PennDOT is needlessly dismissing decades of continuous and significant experience and expertise while incurring the transition costs associated with engaging a new firm that has not previously performed services under PennDOT's Fabricated Structural Steel Plant Inspection contract.

(R. Item 3, BV Protest, R.R. at 9a-10a.)

the November 13, 2014 rankings. (R. Item 9 BV Reply in Support of Protest at 3-8, R.R. at 82a-87a.).

Indeed, BV did not contend below that it lacked notice of the grounds for its protest on November 13, 2014; rather it asserted only that it "did not appreciate" the basis for its protest until the debriefing meeting. (R. Item 9 BV Reply in Support of Protest at 2 & Rzonca Certification, R.R. at 81a, 89a ¶4.). The fact that BV may not have subjectively understood that it had grounds for protest does not delay the running of the seven-day period for filing a protest; if the protestant should have known of the grounds for protest more than seven days before filing the protest, the protest is barred even if the protestant lacked actual knowledge of those grounds. *Cummins*, 877 A.2d at 553-55. Because BV "knew or should have known of the facts giving rise to the protest" on November 13, 2014, it was required to file its protest on or before November 20, 2014. 62 Pa. C.S. § 1711.1(b).

BV's argument that it filed its protest on November 20, 2014 likewise fails. In determining whether a protest is untimely under Section 1711.1(b) of the Procurement Code, the date that the protest is filed is the date that it was received by the agency, not the date that it was sent to the agency. *Firetree, Ltd.*, 3 A.3d at 764; *see also* 1 Pa. Code § 31.11. BV's protest was not received by DOT until November 21, 2014. (R. Item 10, Final Determination at 2; R. Item 6 Bracken Certification, R.R. at 56a ¶14; R. Item 9 Rzonca Certification, R.R. at 90a ¶8.) While BV attempted to email the protest on November 20, 2014, the email was rejected by DOT's server and was not delivered to or received by DOT's executive offices on November 20, 2014. (R. Item 9 Rzonca Certification & Email Delivery Failure Report, R.R. at 90a ¶¶7-8, 92a.) The unsuccessful sending of an email does

9

not constitute filing with an administrative agency. *Roman-Hutchinson v. Unemployment Compensation Board of Review*, 972 A.2d 1286, 1289 (Pa. Cmwlth. 2009); *McClean v. Unemployment Compensation Board of Review*, 908 A.2d 956, 957-58 (Pa. Cmwlth. 2006). Moreover, the fact that the email reached DOT's server does not constitute receipt by the head of DOT, with whom the protest must be filed. *See Russo v. Unemployment Compensation Board of Review*, 13 A.3d 1000, 1001-03 (Pa. Cmwlth. 2010) (appeal left before expiration of deadline in drop box in foyer of building when agency offices were locked was untimely because it was not filed until agency picked it up the next day).

BV cites no rule, regulation or decision of any court holding that unsuccessful electronic transmission constitutes the receipt or filing of a document. The authorities on which BV relies do not provide or hold that filing occurs at the time when an electronic transmission is rejected; rather they allow unsuccessful electronic transmission as basis for *nunc pro tunc* relief despite the fact that the document was not received and filed at the time of the failed transmission. *See* Pa. R.C.P. No. 205.4 (e)(4)(ii) ("If a party makes a good faith effort to electronically file a legal paper but it is not received, accepted or filed by the electronic filing system, the court may order that the paper be accepted and filed *nunc pro tunc* upon a showing that reasonable efforts were made to timely present and file the paper"); *Phoenix Global Ventures, LLC v. Phoenix Hotel Associates, Ltd.*, 422 F.3d 72, 74, 76 (2d Cir. 2005) (court could "excuse" filing of motion one day beyond deadline where counsel "was assured" that filing was successful on the date of filing, within filing deadline, and was notified of rejection next day, after deadline expired); *Dallas v. Platinum Health Care, LLC*, (E.D. Mo., No. 4:14-CV-1377 (CEJ), filed Dec. 15, 2014), 2014 U.S. Dist. LEXIS 172735 at *3-*4 (late

10

filing treated as timely based on "extraordinary circumstance" that prevented timely filing where counsel was notified on the last day for filing that electronically filed complaint had been received by court filing system and complaint was not rejected until the next day); *Inwards v. North Dakota Workforce Safety & Insurance,* 851 N.W.2d 693, 697-98 (N.D. 2014) (untimely perfection of appeal excused under electronic filing rule providing that "[o]n a showing of good cause, the court may grant appropriate relief if electronic filing or electronic service was not completed due to technical problems").[4]

BV has, however, shown that its protest should have been heard *nunc pro tunc*. A document filed with an administrative agency after the expiration of a jurisdictional deadline that would ordinarily bar its consideration can be accepted as filed *nunc pro tunc* where the filer shows that extraordinary circumstances caused the delay in filing. *Union Electric Corp. v. Board of Property Assessment, Appeals & Review of Allegheny County*, 746 A.2d 581, 584 (Pa. 2000); *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130, 1131 (Pa. 1996); *H.D. v. Department of Public Welfare*, 751 A.2d 1216, 1219 (Pa. Cmwlth. 2000); *Martin Media v. Pennsylvania Department of Transportation*, 727 A.2d 140, 142 (Pa. Cmwlth. 1999). The fact that the Procurement Code does not specifically address and provide for such relief does not preclude allowance of a protest *nunc pro tunc*. Nunc pro tunc relief is an equitable exception to strict deadlines that by their terms absolutely bar untimely filings. *Criss v. Wise*, 781 A.2d 1156, 1159 (Pa. 2001); *Martin v. Department of Public Welfare*, 514 A.2d 204, 208-09 (Pa.

---

[4] The remaining case cited by BV in support of its argument on this issue, *Wilson v. Karatinos*, 52 Pa. D.&C.2d 122 (Lawrence Co. C.P. 1971), involved whether a late response to allegations in a pleading should be allowed by amendment and did not address any issue of electronic filing or the date when a document is considered filed.

Cmwlth. 1986). Equitable considerations apply to Procurement Code protests and can permit a protest that would otherwise be untimely. *Omnicare, Inc.*, 68 A.3d at 24 (agency would be estopped from enforcing Procurement Code seven-day time limit if it had misrepresented the deadline for filing a protest); *Firetree, Ltd.*, 3 A.3d at 764 n.6 (although Procurement Code "requires the filing of a protest no later than seven days after the date of the contract award, not the date the award is posted on the DGS website …, because section I–28 of the RFP may have misled bidders, we shall use the date that the awards were posted on the DGS website in determining whether Firetree's protest was untimely").

The party seeking *nunc pro tunc* filing must show 1) that extraordinary circumstances, involving fraud or breakdown in the administrative process or non-negligent circumstances related to the party, its counsel or a third party, caused the untimeliness; 2) that it filed the document within a short time period after the deadline or date that it learned of the untimeliness; and 3) that the respondent will not suffer prejudice due to the delay. *Cook*, 671 A.2d at 1131; *C.E. v. Department of Public Welfare*, 97 A.3d 828, 832 (Pa. Cmwlth. 2014); *H.D.*, 751 A.2d at 1219. BV has satisfied all of these requirements.

The rejection of BV's email protest constitutes extraordinary circumstances sufficient to warrant *nunc pro tunc* relief.[5] BV emailed its protest to

---

[5] DOT's statement in a November 14, 2014 email that "[t]here is no formal bid protest process for consultant agreements" (R. Item 9 11/14/14 DOT email, R.R. at 95a), however, does not constitute grounds for *nunc pro tunc* relief. It does not appear that this misstatement had any effect on BV's ability to timely file its protest, knowledge of when that protest had to be filed, or its decision as to when to file. The November 14, 2014 email did not advise BV that it had a later deadline for filing a protest or that it could file a protest only after some further action or event; it stated instead that BV had no protest rights at all for this type of contract. In addition, DOT that same day directed BV to the Procurement Code, which sets forth the protest rights that a bidder or offeror has and the seven-day deadline for filing a protest, and BV reviewed the **(Footnote continued on next page…)**

12

DOT on November 20, 2014, before the expiration of the filing deadline. The fact that the email was sent at 6:33 p.m., after business hours, does not negate its timeliness. Absent a statute or regulation requiring that an electronic transmission be received by a particular time of day to be considered filed on that day, a document is timely filed if it is successfully electronically transmitted at any time before midnight of the filing deadline. *Dumberth v. Unemployment Compensation Board of Review*, 837 A.2d 678, 681-83 (Pa. Cmwlth. 2003) (*en banc*) (fax transmission successfully sent after business hours on last day of deadline was timely filed). DOT does not contend that it has any regulation requiring that protests or other filings be received by the close of business to be treated as filed on the day that they are actually received. *Compare* 52 Pa. Code § 1.11(a)(4) (providing that documents are deemed filed with the Public Utility Commission "[o]n the date stated on the confirmation of receipt from the Commission's electronic filing system, when the time shown is prior to 4:30 p.m. local prevailing time in the Eastern Time Zone (United States of America) and … the Commission offices are open," but that "[w]hen a document is filed electronically when the offices of the Commission are closed, the document will be deemed to be filed at the time the offices next open").

BV had reason to believe that its timely email was a proper method of filing its protest. BV understood from its dealings with DOT that DOT permitted filing by email. (R. Item 9 Rzonca Certification, R.R. at 90a ¶6.) DOT does not contend that its regulations or the Procurement Code or any other applicable

---

(continued…)

Procurement Code to determine its rights. (R. Item 9 11/14/14 BV email, R.R. at 94a.) BV in fact concluded that it could file a protest before the filing deadline and understood that the filing deadline was November 20, 2014. (R. Item 9 Rzonca Certification, R.R. at 89a ¶5.)

13

regulations or statutes prohibit or restrict the filing of Procurement Code protests by email or advise filers that they utilize email transmission at their own risk. Indeed, DOT admitted at oral argument that it accepts protests filed by email. This case thus stands in sharp contrast to the decisions where this Court has held that unsuccessful email filing did not constitute grounds for *nunc pro tunc* relief. *See Roman-Hutchinson*, 972 A.2d at 1289 (failure of email transmission did not constitute extraordinary circumstances because the agency's regulation expressly provided that "[a] party filing an appeal by electronic transmission is responsible for using the proper format and for delay, disruption, interruption of electronic signals and readability of the document and accepts the risk that the appeal may not be properly or timely filed") (quoting 34 Pa. Code § 101.82(b)(4)) (emphasis omitted); *McClean*, 908 A.2d at 959.

While BV's email was rejected by DOT's server and was therefore not received by DOT on November 20, 2014, the rejection was due to a DOT formatting restriction, not to any error in address or any malfunction in BV's transmission. (R. Item 9 Rzonca Certification, R.R. at 90a ¶8.) BV had no notice of DOT's formatting restriction. BV was unaware that DOT's server does not accept .ZIP files. (*Id.* ¶9.) DOT does not contend that its regulations prescribe format requirements for email filings or submissions. Nor does DOT contend that any of its communications to bidders or procurement policies or guidelines advise parties of format restrictions on email submissions or that BV had any notice that .ZIP file documents would not be accepted. Moreover, DOT's failure report did not advise BV of the reason for the rejection of the email. (R. Item 9 Email Delivery Failure Report, R.R. at 92a) Given the absence of any notice by DOT of its restriction on email format, the rejection of BV's timely sent email protest

14

constitutes extraordinary, non-negligent circumstances that delayed the filing of BV's protest.

There is no dispute that BV satisfied the other two requirements for *nunc pro tunc* relief. BV inquired into the reasons for the rejection of its email and successfully resent and filed its protest by email on November 21, 2014, the next day, only one day after the deadline. (R. Item 9 Rzonca Certification, R.R. at 90a ¶8.) There is no claim by DOT that the one-day delay caused it any prejudice. To the contrary, the only arguments that DOT has asserted against BV's request for *nunc pro tunc* relief are the contentions that such relief cannot be granted in Procurement Code protests and that BV has not shown extraordinary circumstances. (Respondent's Br. at 24-27.)

Because the Secretary erred in denying BV's request for leave to file its protest *nunc pro tunc*, we reverse the Secretary's dismissal of the protest as untimely and remand this matter to the Secretary for consideration of the protest on the merits.[6]

_____
JAMES GARDNER COLINS, Senior Judge

---

[6] BV in its brief requests that this Court also order a stay of procurement or cancelation of the inspection contracts. (Petitioner's Br. at 39.) This request is denied. DOT lifted the stay of procurement based on its conclusion the protest lacked merit, not solely on the grounds that it was untimely, and on the ground that proceeding without delay was necessary because the existing inspection contracts would expire at the end of December 2014. (R. Item 7, Memorandum of Deputy Secretary, R.R. at 12a-13a.). BV has not shown in this appeal that those determinations are invalid.

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bureau Veritas North America, Inc., :
                                 :
              Petitioner      :
                                 :
             v.             : No. 99 C.D. 2015
                                 :
Department of Transportation, :
                                 :
              Respondent    :

# **O R D E R**

AND NOW, this 3rd day of November, 2015, the final determination of the Secretary of the Department of Transportation (Secretary) is REVERSED. This matter is REMANDED to the Secretary to consider Petitioner's protest on the merits. Petitioner's application requesting that the Court take judicial notice is DENIED.

Jurisdiction relinquished.

_____
JAMES GARDNER COLINS, Senior Judge