IN THE COMMONWEALTH COURT OF PENNSYLVANIA

MP Notary & Tags, Inc.,          :
             Petitioner    :
                        :
      v.                  :
                        :
Department of Transportation,   :   No. 992 C.D. 2024
             Respondent  :   Submitted: April 13, 2026

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE FIZZANO CANNON           FILED: May 7, 2026

MP Notary & Tags, Inc. (Petitioner) petitions for review of a July 1, 2024 order of the Executive Deputy Secretary for the Department of Transportation, Bureau of Motor Vehicles (Department) affirming a Hearing Examiner's dismissal of Petitioner's petition to appeal *nunc pro tunc*. Upon review, we affirm.

## I. Background[1]

Petitioner was authorized to process vehicle titles and issue tags pursuant to an Agent Services Contract (ASA) with the Department.[2] Reproduced Record (R.R.) at 63a. On or about December 7, 2022, state police officers raided Petitioner's offices and seized Petitioner's papers, computers, and other

---

[1] No evidentiary hearing was conducted in this matter, and all factual statements are representative of allegations made by the parties and the parties' exhibits.

[2] The Department originally issued licenses to agents to perform such functions. This changed when the legislature amended Section 7501 of the Vehicle Code, 65 Pa.C.S. § 7501, requiring the Department to enter contracts for agent services. *See* Act of December 9, 2002, P.L. 1278.

appurtenances used to perform functions under its ASA.[3]  R.R. at 6a & 63a. Petitioner was allegedly advised by the officers that "[its] business was closed" and Petitioner thereafter shut down its business and closed its office.[4]  *Id.*

Petitioner's principal subsequently made several phone calls to the Department to inquire about receiving paperwork and temporary tags to resume its business after its materials were confiscated by the state police.  R.R. at 7a.  An auditor from the Department arranged to meet with Petitioner's principal to distribute the requested items.  *Id.*  Petitioner's principal later received an email that an official notice of termination would be mailed.  *Id.*

On February 23, 2023, the Department's Director issued an official notice of termination to Petitioner that its ASA was terminated pursuant to Paragraphs 13(c) and (d) of the ASA and the Program Requirements outlined in Exhibit B of the ASA.[5]  R.R. at 11a.  Paragraph 13 stated, in relevant part, that

> [t]he Department may . . . terminate this Agreement for good cause shown, including, but not limited to –
>
> (c) Culpable conduct in the performance of this Agreement or conviction of a crime of such a nature that continuation of the contractual relationship is inimical to the interests of the Department; or

---

[3] The criminal complaints and a valid affidavit of probable cause to obtain an arrest warrant are contained in the record.  R.R. at 35a-42a.

[4] Petitioner maintains that no official notice was provided by the agents during the search and seizure, thereby depriving it of the right to appeal the allegedly illegal seizures.  R.R. at 6a. However, such arguments are relevant only to the pending criminal matter.

[5] The Department emphasized that its relationship with Petitioner was contractual.  R.R. at 83a.  "In exchange for being authorized to provided enhanced inspection services, Petitioner agreed to abide by certain terms and conditions, and if it did not, it would be penalized."  *Id.*

2

> (d) Misrepresentation or fraud on the part of Provider in entering into or administering the terms of this Agreement.

*Id.* The Program Requirements further provided that "[t]he Department may deem any individual who has engaged in conduct harmful to the Department, as described herein or in the [ASA], ineligible to participate in the provision of services under any agreement with the Department." *Id.* The Department explained that Petitioner was in violation of these provisions because Petitioner "ha[d] been involved in and/or charged with" the following: dealing in proceeds of unlawful activity; insurance fraud; theft by deception; forgery; false application for certificate of title or registration; unsworn falsification to authorities; altered, forged, or counterfeit documents; corrupt organizations; and/or criminal conspiracy.[6] *Id.* The notice of termination provided Petitioner with the right to appeal within 30 days of the mailing date of the termination notice.[7] *Id.* at 12a-13a. Petitioner was also entitled to request a hearing on the above referenced sanctions within 30 days of the mailing date of the termination notice. *Id.* at 33a. However, the notice was mailed to Petitioner's shuttered business. *Id.* at 7a. As such, Petitioner did not receive the notice until after the deadline to appeal had expired.[8] *Id.*

---

[6] Specifically, the Department notes that Petitioner "issued a registration card or plate containing a misstatement of fact or other false information which [Petitioner] knew or should have known to be false" and "processed applications or issued registration cards or plates without proper documentation as required by the Department." R.R. at 12a.

[7] 2 Pa.C.S. §§ 501-508; 1 Pa. Code Part II; 67 Pa. Code Ch. 491.

[8] This Court notes that at the time of the initial petition to appeal *nunc pro tunc*, Petitioner had two suspension matters pending on the Department's Administrative Docket. *See* R.R. at 27a & 51a-55a. The official notices for each suspension matter were mailed to the address on file, which is the same address at issue in this matter. *Id.* at 51a-55a. The suspension notices were mailed on January 19, 2022, and July 25, 2022, respectively, and both appeals were timely filed. *Id.* at 27a, 51a & 54a.

3

On July 26, 2023, Petitioner filed a petition to appeal the notice of termination *nunc pro tunc*. R.R. at 6a. In explaining why Petitioner did not file a timely appeal, Petitioner asserted:

> [N]o such notice was received in the mail until much later when [P]etitioner's landlord of her (then shuttered) business contacted her concerning mail. [ ] Petitioner was unaware that she had still maintained a right to appeal given that the official mail date reflected on the notice she obtained in the mail was February 23, 2023 which was well more than 30 days since its business was closed by the Commonwealth illegally on December 7, 2022.

*Id.* at 7a. The petition further sought to challenge the legality of the ASA's termination. *Id.* at 8a. Thereafter, the Department filed an answer opposing Petitioner's petition to appeal *nunc pro tunc* and a motion to dismiss Petitioner's appeal for untimeliness in the same document. *Id.* at 26a & 29a. On August 8, 2023, the Department's hearing officer denied Petitioner's petition to appeal *nunc pro tunc* (and supersedeas)[9] and granted the Department's motion to dismiss the appeal. *Id.* at 91a.

On September 7, 2023, Petitioner filed an appeal from the hearing officer's August 8, 2023 order denying its petition to appeal *nunc pro tunc* and granting the Department's motion to dismiss the appeal. R.R. at 62a. The Department filed an answer and argued that termination was proper due to the felony and misdemeanor charges against Petitioner. *Id.* at 81a. The Executive Deputy Secretary thereafter issued an order on May 3, 2024, affirming the hearing officer's

___

[9] The motion for supersedeas was made in accordance with Section 491.6(g) of Title 67 of the Pennsylvania Code which permits restoration of privileges pending appeal. R.R. at 33a; 67 Pa. Code § 491.6(g).

4

August 8, 2023 order. *Id.* at 98a. That same day, the Department also filed motions to dismiss and administratively close the case.[10]

Petitioner filed an answer to the Department's motions to dismiss and administratively close the case on May 6, 2024. R.R. at 94a & 99a. The Executive Deputy Secretary again affirmed the hearing officer's order on July 1, 2024. Petitioner's Br. at A-2. It is from the July 1, 2024 order that Petitioner now petitions this Court for review.

## II. Issues

Before this Court,[11] Petitioner first argues that there were sufficient bases to grant its petition to appeal *nunc pro tunc*. Petitioner's Br. at 10. Specifically, Petitioner maintains that the agents of the Commonwealth illegally shuttered its business, thereby precluding Petitioner from receiving the official notice of termination in a timely manner. *Id.* On the merits, Petitioner argues that it was deprived of due process when the Department failed to conduct a predetermination hearing before issuing its notice of termination and when the hearing officer failed to conduct an evidentiary hearing on Petitioner's petition to appeal *nunc pro tunc*. *Id.* at 13.

The Department argues that it properly affirmed the hearing officer's order denying Petitioner's petition to appeal *nunc pro tunc* because Petitioner's negligence caused its untimeliness. Department's Br. at 6 & 9. The Department

---

[10] The Department's motions to dismiss and administratively close the case were not addressed in the Executive Deputy Secretary's May 3, 2024 order.

[11] This Court's review of a decision of the Department is limited to determining whether the necessary findings of fact are supported by substantial evidence and whether there was a constitutional violation or an error of law. *Balfour Beatty Constr. v. Dep't of Transp.*, 783 A.2d 901, 905 (Pa. Cmwlth. 2001) (citing 2 Pa.C.S. § 704).

also maintains that Petitioner was not deprived of due process. *Id.* at 12. The Department avers that the serious nature of Petitioner's criminal charges warranted prompt termination. *Id.* The Department further notes that it was Petitioner's own untimeliness that precluded Petitioner from requesting a post-deprivation hearing. *Id.* at 12-13.

### III. Discussion

Appeal periods are jurisdictional and "may not be extended as a matter of grace or mere indulgence; otherwise there would be no finality to judicial action." *City of Phila. v. Tirrill*, 906 A.2d 663, 665 (Pa. Cmwlth. 2006). Stated otherwise, the failure to file a timely appeal deprives a court of jurisdiction. *Gomory v. Cmwlth.*, 704 A.2d 202, 204 (Pa. Cmwlth. 1998). Nevertheless, there are certain exceptions to this rule that confer the ability to appeal *nunc pro tunc*. *See Tessitor v. Town of McCandless* (Pa. Cmwlth., No. 162 C.D. 2024, filed April 7, 2025).[12] However, "the party seeking *nunc pro tunc* relief carries 'a heavy burden to justify an untimely appeal.'" *Id.* (quoting *Harris v. Unemployment Comp. Bd. of Rev.*, 247 A.3d 1223, 1229 (Pa. Cmwlth. 2021)).

Pennsylvania courts have consistently held that a party seeking leave to file an appeal *nunc pro tunc* must show

> 1) that extraordinary circumstances, involving fraud or breakdown in the administrative process or non-negligent circumstances related to the party, its counsel, or a third party, caused the untimeliness; 2) that it filed the document within a short time period after the deadline or

---

[12] Under Rule 414(a) of the Commonwealth Court's Internal Operating Procedures, unreported decisions of the Commonwealth Court issued after January 15, 2008, may be cited for their persuasive value. 210 Pa. Code § 69.414(a).

date that it learned of the untimeliness; and 3) that the respondent will not suffer prejudice due to the delay.

*Bureau Veritas N. Am., Inc. v. Dep't of Transp.*, 127 A.3d 871, 879 (Pa. Cmwlth. 2015) (citing *Cook v. Unemployment Comp. Bd. of Rev.*, 671 A.2d 1130, 1131 (Pa. 1996)). In *Tirrill*, 906 A.2d at 667, this Court stated that "[a]n appellant seeking permission to file a *nunc pro tunc* or 'now for then' appeal ***must proceed with reasonable diligence once he knows of the necessity to take action***." *Id.* (emphasis added); *see also Amicone v. Rok*, 839 A.2d 1109, 1115-16 (Pa. Super. 2003) (denying *nunc pro tunc* petition because it was filed four months after petitioner's notice of appeal was rejected);[13] *Smith v. Dep't of Transp., Bureau of Driver Licensing*, 749 A.2d 1065, 1067 (Pa. Cmwlth. 2000) (denying *nunc pro tunc* petition where appeal was one day late and petitioner lacked evidence to corroborate reason for delay).

Here, Petitioner argues that its petition to appeal *nunc pro tunc* was improperly denied before an evidentiary hearing on the petition. Petitioner's Br. at 13. We disagree. A petition to appeal *nunc pro tunc* must be supported by "independent evidence substantiating [petitioner's] explanation for the late filing of the appeal." *Smith*, 749 A.2d at 1067. This Court has clarified that "[o]nly when a petition to appeal *nunc pro tunc* sets forth allegations sufficient to warrant such an appeal must a hearing be held to determine the validity of those allegations." *Marconi v. Ins. Dep't*, 641 A.2d 1240, 1242 (Pa. Cmwlth. 1994) (citing *Connor v. Westmoreland Cnty. Bd. of Assessment Appeal*, 598 A.2d 610, 613 (Pa. Cmwlth. 1991)). In *Marconi*, 641 A.2d at 1242, the petitioner argued that he was deprived of

---

[13] Although decisions of the Superior Court are not binding on this Court, they may provide persuasive authority where they address analogous issues. *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

due process when the Pennsylvania Department of Insurance failed to grant him a hearing on whether he should be allowed to proceed *nunc pro tunc*. The petitioner originally failed to request a formal hearing on his request for reconsideration within the 10-day jurisdictional period and alleged that the reason for his delay in filing a request for a formal hearing was due to his own illness, as well as managing funeral arrangements for several relatives. *Id.* at 1241-42. He was not afforded a hearing on his petition to proceed *nunc pro tunc*. *Id.* at 1242. However, this Court determined that even if the petitioner's arguments were true, the arguments were not sufficient grounds to grant a *nunc pro tunc* appeal because the petitioner failed to establish any fraud, non-negligent third-party conduct or breakdown in the administrative process which might excuse an untimely filing. *Id.* As such, "any hearing on the validity of these allegations would have been moot." *Id.*

Similarly here, Petitioner was entitled to appeal its termination within 30 days of the February 23, 2023 mail date of the termination notice. R.R. at 12a. Petitioner failed to do so for 153 days. *See id.* at 25a. Petitioner argues that "[t]his is not a case in which [P]etitioner was negligent in not checking its mail. It could not have been getting any mail. The Commonwealth illegally shuttered its business." Petitioner's Br. at 11-12. These arguments lack merit. Although Petitioner argues that the Department should have known not to send the notice to a shuttered business, Petitioner had a duty to monitor its mail. *See Best Courier v. Dep't of Lab. & Indus.*, 220 A.3d 696, 701-02 (Pa. Cmwlth. 2019) (determining that a petitioner's failure to monitor mail in an unstaffed office did not constitute non-negligent circumstances sufficient to allow *nunc pro nunc* relief). We have consistently found petitioners negligent in not making other arrangements for their mail while they were away from the premises. *See, e.g.*, *Douglas v. Unemployment*

8

*Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1903 C.D. 2013, filed July 16, 2014) (noting that claimant was not entitled to *nunc pro tunc* relief upon a failure to present evidence that she attempted to monitor her mail while away); *Plut v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 2283 C.D. 2007, filed October 14, 2008) (holding failure to have mail forwarded or have someone collect mail from address of record does not justify a late appeal); *King v. Worker's Comp. Appeal Bd. (Pep Boys)* (Pa. Cmwlth., No. 1796 C.D. 2007, filed February 25, 2008) (holding claimant's "failure to make arrangements for retrieval or forwarding of his mail was negligent").

Here, as in the cases cited above, Petitioner presented no evidence that it made any arrangements to monitor its mail or have mail forwarded, despite having actual notice via email from the Department that an official notice of termination would be mailed. R.R. at 7a. Thus, we discern no error in the Executive Deputy Secretary's determination that Petitioner failed to act with reasonable diligence to provide a forwarding address to the Department after closing its business. *See id.* at 11a; *Tirrill*, 906 A.2d at 667. Further, we observe that the Department sent two suspension notices to Petitioner's business address prior to the shuttering of Petitioner's business, both of which Petitioner responded to via timely appeal. *Id.* at 51a-55a. Thus, Petitioner was also on notice that any official notices would be mailed to its registered business address. *See Best Courier*, 220 A.3d at 698 n.3 (noting that an appeal from a prior official notice sent to the same address suggests correctness of such address). Petitioner thereby "assumed the risk that time-sensitive matters would be received during [] periods of absence." *Id.* at 702. Therefore, the Executive Deputy Secretary properly concluded that Petitioner's untimeliness was

not the result of non-negligent conduct and any hearing on the validity of Petitioner's allegations would have been moot. *Marconi*, 641 A.2d at 1242.

Because Petitioner did not appeal within the 30-day jurisdictional period and has alleged no grounds sufficient to permit a *nunc pro tunc* appeal, the July 1, 2024 Order of the Executive Deputy Secretary is affirmed.[14]

## IV. Conclusion

Based on the foregoing discussion, the July 1, 2024 Order of the Executive Deputy Secretary is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[14] In light of this Court's holding, we do not address the merits of Petitioner's arguments.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

MP Notary & Tags, Inc.,          :
               Petitioner    :
                               :
        v.                      :
                               :
Department of Transportation,    :    No. 992 C.D. 2024
               Respondent   :

## **O R D E R**

AND NOW, this 7th day of May, 2026, the July 1, 2024 order of the Executive Deputy Secretary for the Department of Transportation, Bureau of Motor Vehicles, is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge