Laurence **HARVILCHUCK**, Petitioner

v.

## DEPARTMENT OF ENVIRONMENTAL PROTECTION, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 8, 2015.

Decided June 2, 2015.

Jordan B. Yeager, Doylestown, for petitioner.

Michael A. Braymer, Assistant Counsel, Meadville, for respondent.

James V. Corbelli, Pittsburgh, for intervenor WPX Energy Appalachia, LLC.

BEFORE: DAN PELLEGRINI, President Judge, and P. KEVIN BROBSON, Judge, and ANNE E. COVEY, Judge.

OPINION BY President Judge DAN PELLEGRINI.

Laurence Harvilchuck (Objector) petitions for review of the April 1, 2014 determination of the Environmental Hearing Board (Board) granting the Department of Environmental Protection's (DEP) motion to dismiss Objector's appeal from its issuance of a permit filed by WPX Energy Appalachia, LLC (Permittee) to drill and operate McNamara 39 11H Well (Well) as untimely, as well as denying Objector's

request to appeal *nunc pro tunc.* For the following reasons, we reverse and remand.

### I.

Objector had filed an appeal to the Board on January 28, 2013, challenging DEP's decision to issue Permittee the original well drilling permit for the Well (Original Permit). In his notice of appeal answering the inquiry, "On what date and how did you receive notice of DEP's action," Objector stated:

> Notice of [DEP's] Action was delivered electronically to [Objector] from [DEP's] eFACTS database by [DEP's] eNOTICE service in an e-mail update mailed on January 1, 2013. Written notice of [DEP's] action was received by [Objector] on January 25, 2013 in response to a written request, dated January 4, 2013, to [DEP] under the Right–To–Know Law (65 P.S. § 67.703) for a copy of the Well Permit.

(Notice of Appeal, EHB Docket No. 2013–015–M.). DEP's eNOTICE system is a notification system designed to provide information about Departmental activities and encourage civic engagement in environmental issues. Pennsylvania's Environment Facility Application Compliance Tracking System (eFACTS) allows individuals to search for authorizations, clients, sites and facilities.

On September 25, 2013, DEP issued Permittee a renewal permit (Renewal Permit) authorizing it to drill and operate the Well. Notice of the issuance of the renewal permit was not published in the *Pennsylvania Bulletin.* On September 27, 2013, Objector received an automated e-mail generated by DEP's eNOTICE system stating that "[t]he following Permit Applications have changed as of Friday, September 27, 2013[,]" and then listed specific details identifying the Well. On September 30, 2013, Objector received a second auto-

mated eNOTICE e-mail informing Objector that "Authorization # 995272 [for the Well] has been updated on 9/25/2013." (Reproduced Record (R.R.) at 28a, 44a.) Both the eNOTICE e-mails to Objector identified the Well by its specific Subfacility ID and name and provided a link to DEP's public eFACTS website.

Right after receiving the September 27, 2013 eNOTICE e-mail, Objector submitted a Right–to–Know Law[1] Record Request Form (RTKL Request) to DEP requesting a "copy of the 'Permit and Application to Drill and Operate an Unconventional Well,' and all attachments thereto" along with "all departmental records, correspondence, minutes of meetings, and transcripts from phone calls that collectively constitute the Administrative Review" of the Well (Renewal Permit). (R.R. at 43a.) He submitted another RTKL Request on September 30, 2013, upon receiving the second eNOTICE e-mail asking for a copy of the Renewal Permit.

DEP responded to Objector's first RTKL Request with letters dated October 2, 2013, and October 3, 2013, notifying him that it required up to an additional 30 days to respond to his first RTKL Request. On October 7, 2013, DEP responded to his second RTKL Request with the same message as before. DEP did not provide any reasons for its 30–day delay.

On October 18, 2013, DEP again responded to Objector's first RTKL Request, notifying him that it did not have the records requested and that it "is not required 'to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record.'" (R.R. 51a–52a.) On October 24,

2013, DEP responded to Objector's second RTKL Request and provided him with a copy of the Renewal Permit.

## II.

On November 6, 2013, Objector appealed to the Board challenging DEP's issuance of the Renewal Permit. In his notice of appeal for his November appeal under the inquiry, "On what date and how did you receive notice of DEP's action," Objector responded with an answer that is almost identical to the information contained in his original appeal, stating:

Notice of [DEP's] Action was published by [DEP's] eNOTICE service in an e-mail update mailed on September 30, 2013. Written notice of [DEP's] action was received by [Objector] on October 24, 2013 in response to a written request by [Objector], dated September 30, 2013, to [DEP] under the Right–To–Know Law (65 P.S. § 67.703) for a copy of the Well Permit.

(Notice of Appeal, R.R. 5a.)

Before the Board, Objector asserted that his 30–day appeal period began on October 24, 2013, when he received written notice of DEP's action and a copy of the Renewal Permit. He also argued that as with the Original Permit, DEP had also failed to adequately ascertain whether the Renewal Permit was issued to the proper entity.

DEP filed a motion to dismiss, arguing that Objector filed his appeal after the 30–day appeal period, contending that he had received actual notice of DEP's action on September 30, 2013, the date on which Objector submitted a RTKL Request asking for a copy of the Renewal Permit.

---

**1.** Right–to–Know Law, Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104, which repealed the former Right–to–Know Law, Act of June 21, 1957, P.L. 390, *as amended, formerly* 65 P.S. §§ 66.1–66.4.

Because he failed to file his appeal by October 30, 2013, DEP argued that the Board lacked jurisdiction over the appeal.[2] Objector disagreed that he had actual notice on September 30, 2013, and maintained that he did not have actual notice of DEP's action until he received written notification of the action on October 24, 2013, when DEP provided him with a copy of the Renewal Permit.

Although finding that the eNOTICE and the eFACTS webpage do not constitute actual notice on their own, the Board granted DEP's motion to dismiss the appeal as untimely because Objector filed his appeal more than 30 days after having actual notice of DEP's issuance of the Renewal Permit. It determined that Objector had actual knowledge on the date he visited the eFACTS webpage and filed the RTKL Request when coupled with the knowledge that he gained in filing his prior appeal of the Original Permit. Just because Objector could not comply with 25 Pa.Code § 1021.51(e) requiring that the "notice of appeal must set forth in separate numbered paragraphs the specific objections to the action of the Department," the Board found that could be obviated by filing amendments to his appeal under 25 Pa.Code § 1021.53.[3] The Board also denied Objector's request for appeal *nunc pro tunc* basically for the same reason that it determined that the notice was untimely by finding that Objector could have prepared a good faith notice by the filing deadline of October 30, 2013, and added

objections within the 20 days to amend appeals to the Board.

There were two separate dissents to the Board's determination. In one dissent, Chief Judge Thomas W. Renwand agreed with the majority's position that the eNOTICE e-mails and eFACTS do not constitute notice of DEP's action, but disagreed that Objector had actual notice. He reasoned that simply because Objector had basic information regarding the Renewal Permit, such as the date it was issued, that does not provide him with adequate information to ascertain if he was adversely affected by its issuance. Chief Judge Renwand explained that, "[N]either the eNOTICE nor eFACTS set forth any of the details or conditions of the renewed permit. Without at least some basic information of what is in the renewed permit a member of the public has no way of knowing if his or her interests are affected." (Board's Opinion and Order, 4/1/14, at 27.) He further reasoned that Objector's appeal of the Original Permit does not indicate that he has any knowledge of the information contained in the Renewal Permit and, therefore, cannot be held to have actual notice of the Renewal Permit.

In the other dissent, Judge Steven C. Beckman agreed with the majority that Objector's appeal was untimely as it was filed more than 30 days after he had actual notice of the Renewal Permit; however, he determined that the Board should grant Objector's *nunc pro tunc* appeal as he has shown good cause. Judge Beckman rea-

2. The Permittee joined the Department's motion to dismiss.

3. 25 Pa.Code § 1021.53 provides, in relevant part:
   (a) An appeal or complaint may be amended as of right within 20 days after the filing thereof.
   (b) After the 20–day period for amendment as of right, the Board, upon motion by the

appellant or complainant, may grant leave for further amendment of the appeal or complaint. This leave may be granted if no undue prejudice will result to the opposing parties. The burden of proving that no undue prejudice will result to the opposing parties is on the party requesting the amendment.

soned that the language in the Board's notice of appeal form is inaccurate and, coupled with the 30–day filing requirement and DEP's delay in responding to Objector's RTKL Requests, created an unreasonably narrow window for Objector to timely file his appeal. Judge Beckman further found that Objector acted diligently as he immediately requested a copy of the Renewal Permit as soon as he had "actual notice" of it and promptly filed his appeal once he received a copy of the permit. This appeal followed.[4]

### III.

On appeal, Objector again argues that his appeal to the Board is not untimely because he filed his appeal on November 6, 2013, 13 days after he received actual notice of DEP's action on October 24, 2013. Objector argues that prior to October 24, 2013, the only information he had were the e-mails generated by DEP's eNOTICE system, with the links to the eFACTS webpage, which did not provide sufficient information to initiate an appeal. Objector also contends that the information he received through the eFACTS webpage did not permit him to state his objections with the required level of specificity as required by the Board pursuant to 25 Pa.Code § 1021.51.

Section 1021.52 of the Board's regulation establishes the timing of appealing an action of DEP and, in pertinent part, states:

> Except as specifically provided in § 1021.53 (relating to amendments to appeal or complaint), jurisdiction of the Board will not attach to an appeal from an action of DEP unless the appeal is in writing and is filed with the Board in a

timely manner, as follows, unless a different time is provided by statute:

> * * *

> (2) Any other person aggrieved by an action of
> DEP shall file its appeal with the Board within one of the following:
> (i) Thirty days after the notice of the action has been published in the *Pennsylvania Bulletin.*
> (ii) Thirty days after actual notice of the action if a notice of the action is not published in the *Pennsylvania Bulletin.*

25 Pa.Code § 1021.52(a)(2).

It is undisputed that DEP's action was not published in the *Pennsylvania Bulletin;* as such, pursuant to Section 1021.52(a)(2)(ii), Objector had 30 days after *actual notice* of DEP's decision to issue the Renewal Permit to timely file his appeal.

This Court has held that "[c]onstitutionally adequate notice of administrative action is notice which is reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Milford Township Board of Supervisors v. Department of Environmental Resources,* 165 Pa.Cmwlth. 14, 644 A.2d 217, 219 (1994) (citations omitted). In *Commonwealth v. Crockford,* 443 Pa.Super. 23, 660 A.2d 1326, 1330 (1995), the court quoted Black's Law Dictionary 1061–1062 (6th ed. 1990) defining notice as follows:

> [N]otice expressly and actually given, and brought home to the party directly. The term "actual notice," however, is generally given a wider meaning as embracing two classes, express and im-

---

**4.** Our scope of the Board's order is limited to determining whether its findings of fact are supported by substantial evidence and whether constitutional violations or errors of law were committed. *Eureka Stone Quarry, Inc. v. Department of Environmental Protection,* 957 A.2d 337, 344 (Pa.Cmwlth.2008).

plied; the former includes all knowledge of a degree above that which depends upon collateral inference, or which imposes upon the party the further duty of inquiry; the latter imputes knowledge to the party because he is shown to be conscious of having the means of knowledge. In this sense actual notice is such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally *because the evidence within his knowledge was sufficient to put him upon inquiry.* (Emphasis added.)

We agree with Chief Judge Renwand that the eNOTICE e-mails and the eFACTS webpage that Objector viewed on September 27, 2013, and September 30, 2013, did not contain adequate information for Objector to ascertain whether he was adversely affected and, consequently, whether he should file an appeal. The eNOTICE e-mail Objector received on September 27, 2013, stated that, "The following Permit Applications have *changed* as of Friday, September 27, 2013," and then identified the Well by its Subfacility ID and name. (R.R. at 40a) (emphasis added). The eNOTICE e-mail Objector received on September 30, 2013, had identical information. Neither e-mails referenced the contents of the permit or mentioned that the permit was issued.

Furthermore, the eFACTS webpage to which the eNOTICE e-mails links simply states as of September 25, 2013, "The technical review and decision review are complete and either the permit decision and/or permit issuance are *forthcoming.*" (R.R. at 41a) (emphasis added). The term "forthcoming" suggests that the permit's

issuance will be occurring sometime in the future; not that it has already been issued. However, also on the eFACTS webpage, the permit's status is noted as, "Issued on 9/25/2013," which seems to suggest that the permit was issued, thus adding to the confusion. *Id.* In any case, as with the eNOTICE e-mails, the eFACTS webpage does not reveal any information about the contents of the permit, thereby precluding Objector from determining the permit's effect on him.

While the Board's majority admits that the eNOTICE e-mails and the eFACTS webpage do not provide actual notice on their own, they point to the fact that Objector had appealed the Original Permit and, thus, was on notice as to the contents of the Renewal Permit as the terms of both permits were identical. However, Objector had no way of knowing that the terms of both permits were identical simply from the information contained in the eNOTICE e-mails and the eFACTS webpage. He had no information whatsoever of what the Renewal Permit entailed or whether it would adversely affect him. Quite simply, Objector did not have and could not have had sufficient knowledge to appeal the Renewal Permit until he received written notification of DEP's action on October 24, 2013, when DEP provided him with a copy of the permit. Once he received actual notice, he appealed well within the Board's 30–day appeal requirement.[5]

Accordingly, the Board's order is reversed and the matter is remanded for consideration of the merits of Objector's appeal.

---

**5.** Objector contends that even if his appeal was untimely, the Board erred when it failed to grant his request to appeal *nunc pro tunc,* as he showed good cause for not timely filing.

Because we have concluded that Objector's appeal was timely, we need not address this issue.

## *ORDER*

AND NOW, this 2nd day of June, 2015, the order of the Environmental Hearing Board dated April 1, 2014, at No. 2013–202–M, is reversed and the matter is remanded for consideration of the merits of Laurence Harvilchuck's appeal.

Jurisdiction relinquished.