IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marjorie Hudson, David Lippert, : 
and James H. Mellott, : 
           Petitioners : 
            : 
            : 
        v. : 
            : 
Department of Environmental : 
Protection (Environmental Hearing : 
Board), :   No.  1153 C.D. 2022
           Respondent :   Argued:  September 11, 2023


BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON           FILED: November 16, 2023


      Marjorie Hudson, David Lippert, and James H. Mellott (collectively, Petitioners) petition for review of the September 27, 2022 order of the Pennsylvania Environmental Hearing Board (Board)[1] denying their petition for leave to appeal *nunc pro tunc*[2] (Petition) the decision of the Fulton County Conservation District

---

      [1] Section 3 of the Environmental Hearing Board Act (Act of July 13, 1988, P.L. 530, 35 P.S. §§ 7511-7516) established the Board as an independent board, separate and apart from the Department of Environmental Protection (DEP).  *See* 35 P.S. § 7513.

      [2] *Nunc pro tunc* is Latin for "now for then," and is defined as "[h]aving retroactive legal effect through a court's inherent power."  *Nunc Pro Tunc*, BLACK'S LAW DICTIONARY (11th ed. 2019).

(Conservation District) approving a renewed nutrient management plan for a concentrated animal feeding operation run by Country View Family Farms, LLC (Country View).  Upon review, we affirm.

## I.    Background

Petitioners reside near the concentrated animal feeding operation, which is located in Big Cove Tannery, Pennsylvania, and have challenged various permits and approvals previously obtained by Country View.  Reproduced Record (R.R.) at 3a-5a & 304a.   When Country View submitted its 2022 nutrient management plan application to the Conservation District, notice of the application was published in the *Pennsylvania Bulletin* (*Bulletin*) with the following description:

> Country View
> Family Farms, LLC
> **Bivouac Sow Farm**
> 15197 Great Cove Rd
> Big Cove Tannery, PA 17212

R.R. at 307a (emphasis added).  The Conservation District approved the 2022 nutrient management plan application, and the Department of Environmental Protection (DEP) published a notice of the approval (Approval Notice) in the *Bulletin* on June 25, 2022. *Id.* at 304a-08a.  Neither the term "bivouac" nor the name "Bivouac Sow Farm" appeared in the Approval Notice. *Id.* at 307a-08a.  However, the rest of the description, including Country View's name and the address of the specific concentrated animal feeding operation, appeared in the Approval Notice. *Id.*

2

The deadline to appeal the Approval Notice was July 25, 2022. R.R. at 305a (citing Section 517 of the Agriculture Code, 3 Pa.C.S. § 517;[3] 25 Pa. Code § 1021.52(a)(2)(i)).[4] Petitioners filed their Petition on August 8, 2022. *Id.* Petitioners alleged that prior to June 2022, each notice in the *Bulletin* pertaining to the concentrated animal feeding operation included either the term "bivouac" or the name "Bivouac Sow Farm." R.R. at 4a & 7a. Petitioners further averred that, as in previous years, they "routinely" searched the *Bulletin* electronically for "Bivouac" and "Bivouac Sow Farm" while awaiting a final decision regarding the nutrient management plan application, but that their 2022 search yielded no results. R.R. at 5a-7a. Thus, Petitioners, maintained that the Department's omission from the Approval Notice caused them to miss the appeal deadline. *Id.* at 307a.

On September 27, 2022, the Board issued an order denying the Petition. R.R. at 302a. Two of the Board's administrative law judges (Denying ALJs) endorsed the opinion denying the Petition (Denying Opinion), while two other of the Board's administrative law judges (Granting ALJs) endorsed an opinion granting the

---

[3] Pursuant to Section 517 of the Agriculture Code, "[a]ny person aggrieved by an order or other administrative action of the [State Conservation C]omission issued pursuant to this chapter shall have the right, within 30 days from actual or constructive notice of the action, to appeal the action to the . . . Board." 3 Pa.C.S. § 517; *see also* Section 503 of the Agriculture Code, 3 Pa.C.S. § 503 (stating that the State Conservation Commission was "established by the act of May 15, 1945 (P.L. 547, No. 217), known as the Conservation District Law," and defining the term "conservation district" as "[a]ny county conservation district established under . . . the Conservation District Law"); Section 852 of the Conservation District Law, 3 P.S. § 852 ("creat[ing] the State Conservation Commission, which shall be a departmental administrative commission under the concurrent authority of [DEP] and the Department of Agriculture"); Section 851 of the Conservation District Law; 3 P.S. § 851 (Definitions).

[4] "Any other person aggrieved by an action of [DEP] shall file its appeal with the Board within . . . [t]hirty days after the notice of the action has been published in the [] *Bulletin*." 25 Pa. Code § 1021.52(a)(2)(i).

3

Petition (Granting Opinion). *See id.* at 304a-16a.[5] In the absence of a majority opinion, the Petition was denied by operation of law. *Id.* at 302a.

The Denying ALJs concluded that the purportedly deficient Approval Notice did not provide grounds for *nunc pro tunc* relief, explaining as follows:

> We note that the [Approval Notice] still identified County View Family Farms, LLC as the permittee. It contained the same address of the operation. The [Approval Notice] also contained the same information regarding the county of the operation, the total acres, the animal equivalent units, the types of animals, and the special protection waters. It also informed people how to appeal an action taken on the plan to the Board. Country View's facility was the only one listed under the section entitled "NUTRIENT MANAGEMENT PLANS RELATED TO APPLICATIONS FOR [NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM] PERMITS FOR [CONCENTRATED ANIMAL FEEDING OPERATIONS]." In a nutshell, the Petitioners argue that they should be allowed to file a late appeal because, despite their intense interest in this site, they did not read the Bulletin and instead chose to rely upon a poorly designed word search.

*Id.* at 308a; *see also* R.R. at 59a & 88a. The Denying ALJs explained further:

---

[5] The Board noted in its Granting Opinion that

> [a] review of the docket shows that the parties have worked closely together for years. Indeed, many of the status reports and proposed Orders, which were all adopted by the Board, provided that [Petitioners] would be given notice when [DEP] was going to modify the [existing permits].

R.R. at 314a.

4

The [A]pproval [N]otice at issue here clearly contained sufficient information for an ordinary person to determine that they may be affected by the approval of the nutrient management plan. Perhaps most importantly, the notice contained the name of the permittee, Country View . . . and the county and full address of the facility. It also contained information on the animal types and units and whether any special protection waters are involved. We think anyone reading the *Bulletin* notice would be able to discern what site was involved. Although a name a permittee makes up for its facility may be helpful information to those already familiar with the operation, we cannot conclude that the absence of that name in this instance renders the notice inadequate. Country View's facility was the only one listed under the notices of nutrient management plan approvals. Again, anyone who read the notice would understand that the nutrient management plan had been approved, that the approval had been given to Country View. . . and that the approval governed its facility at 15197 Great Cove Road. We note that a search for the term "Country View" yields exactly one result in the April 2 notice of the application for the nutrient management plan and one result in the June 25 notice of approval of the nutrient management plan. Thus, even if we utilize [] Petitioners' method of searching instead of reading the *Bulletin*, simply using a portion of the name of the permittee easily locates the notice. [] Petitioners' own choice of using limited search terms and not actually reading the Bulletin is not worthy of *nunc pro tunc* relief.[6]

. . . .

---

[6] The Denying ALJs further stated that they were "not entirely satisfied that the sufficiency of public notice in the *Bulletin* [was] a relevant inquiry for justifying *nunc pro tunc* relief," reasoning that "[f]or purposes of a *nunc pro tunc* appeal, it is not a breakdown in the administrative process concerning the notice published in the *Bulletin* by a different agency that matters, but a breakdown in the Board's operations that appears to be the appropriate criterion." R.R. at 308a. We note that the Board's reasoning is inconsistent with this Court's decision in *Delaware Riverkeeper Network v. Dep't of Env't Prot.* (Pa. Cmwlth., No. 1571 C.D. 2017, filed Aug. 1, 2018), which is discussed at length on pages 12 to 13 herein. *See Delaware*, slip op. at 6, 13 & 18-19 (citing 25 Pa. Code § 1021.53a) (concluding that the Board did not abuse its discretion in determining that *DEP's allegedly deficient appeal notice* published in the *Bulletin* did not mislead petitioners for purposes of obtaining *nunc pro tunc* relief) (emphasis added).

5

Finally, [] Petitioners contend that the Commonwealth and Country View had some sort of duty to apprise [] Petitioners of the approval of the nutrient management plan as part of broad discovery requests served more than three years ago in the pending consolidated case at EHB Docket No. 2015-116-L. [] Petitioners cite to no authority for this duty. They do not, for instance, identify any Pennsylvania Rule of Civil Procedure that imposes an ongoing obligation to supplement that sort of discovery request. Rule 4007.4 imposes an obligation to seasonably supplement responses regarding the identity of expert witnesses and persons with knowledge of discoverable matters. Pa.R.Civ.P. 4007.4(1). *See also [Dep't of Env't Prot.] v. EQT Prod. Co.*, 2016 EHB 489, 491-95 (July 21, 2016). There is also an obligation to correct a response that was incorrect or is no longer true. Pa.R.Civ.P. 4007.4(2). But absent an order of the Board, an agreement between the parties, or a new request to supplement a prior discovery response, there is "no duty to supplement the response to include information thereafter acquired." Pa.R.Civ.P. 4007.4(3). [] Petitioners provide no explanation for why discovery propounded on the Commonwealth and Country View in April 2019 creates some indefinite, open-ended entitlement to personal notice of every subsequent action taken with respect to the subject site or why, even if it did, a failure to immediately supplement those discovery responses justifies *nunc pro tunc* relief.

R.R. at 309a-12a. Accordingly, the Denying ALJs determined that "Petitioners' own choice of using limited search terms and not actually reading the *Bulletin*" did not provide the type of "unique and compelling circumstances" necessary to justify granting *nunc pro tunc* relief. *Id.* at 310a & 312a.

The Granting ALJs emphasized the history of litigation between Petitioners and Country View related to the concentrated animal feeding operation and opined that "the unique factual circumstances of this case slightly tip the scales of justice in favor of allowing [] [Petitioners] leave to file their appeal . . . *nunc pro*

6

*tunc*." R.R. at 314a. The Granting ALJs noted the term "Bivouac Sow Farm" appeared consistently in the *Bulletin* for notices related to the concentrated animal feeding operation, including notice of the 2022 nutrient management plan application. *Id.* As a result, the Granting ALJs stated they "believe[d] that it was also reasonable for [] [Petitioners] to rely on a search that was consistent with the naming convention used in each of the prior publications" further noting that the omission of the name "Bivouac Sow Farm" "[felt] particularly problematic since it [was] at variance with the terminology used in the April 2022 application notice." *Id.* at 314a-15a. Accordingly, the Granting ALJs found "special non-negligent circumstances exist[ed] such that an appeal *nunc pro tunc* [was] not only allowed but, in the interest of justice and fairness, [was] required." *Id.* at 314a.

Petitioners sought review in this Court.

## II. Issues

Before this Court,[7] Petitioners argue that the Board erred in denying their request to proceed *nunc pro tunc*. Petitioners' Br. at 27-29. Petitioners contend that an administrative breakdown occurred when DEP published a "defective" Approval Notice by omitting the name of the concentrated animal feeding operation, "Bivouac Sow Farm," despite allegedly including the name of the operation, or some iteration thereof, 18 consecutive times over an 8-year period in similar notices. *Id.*

---

[7] "This Court's standard of review of a denial of an appeal *nunc pro tunc* is whether the [lower tribunal] abused its discretion or committed an error of law." *Croft v. Bd. of Prop. Assessment, Appeals & Rev.*, 134 A.3d 1129, 1130 n.3 (Pa. Cmwlth. 2016) (citation omitted). An abuse of discretion is "not merely an error of judgment"; rather, such abuse occurs when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused." *Id.* (citation and quotation marks omitted).

7

at 17, 20 & 23.[8]  Petitioners maintain that this omission constituted negligence by DEP, as it was "not what a reasonably prudent person would have done under the circumstances." *Id.*  Petitioners allege that on or about June 9, 2022, DEP notified Country View via letter of the approval of the proposed nutrient management plan but failed to disclose the existence of this letter until Petitioners "specifically requested it" on August 2, 2022.[9]  *Id.* at 24.  Further, Petitioners contend that DEP's failure to supplement its responses to an August 8, 2022 request for production constituted an administrative breakdown justifying *nunc pro tunc* relief.  *Id.* at 25; *see also* R.R. at 28a.[10]  Thus, Petitioners maintain that both "[DEP]'s negligent and improper publication of the Approval Notice and [DEP]'s [] failure to notify [them] of the approval despite their ongoing discovery obligations" contributed to their untimely appeal.  *Id.* at 23.

---

[8] Petitioners alleged in their Petition that they became aware of the proposed 2022 nutrient management plan by searching the *Bulletin* using the keyword "Bivouac," and that they "thereafter routinely searched the *Bulletin* using the search terms 'Bivouac' and 'Bivouac Sow Farm.'"  R.R. at 6a-7a.

[9] On August 2, 2022, the parties participated in a conference call to discuss the status report due in connection with the consolidated appeals.  R.R. at 8a.  Petitioners allege that they received actual notice of the Approval Notice on this date, eight days following the expiration of the 30-day appeal period running publication of the June 26, 2022 Approval Notice.  *Id.* at 10a & 126a.

[10] Petitioners allege that on April 9, 2019, they served a request for production on DEP in connection with their appeals from Country View's 2014 and 2016 renewed nutrient management plans, seeking

> [a]ll documents that refer or relate in any way to the Permits; application, review, and/or approval of the Permits; Site; and/or Project[,]" and "[a]ll documents that refer to or constitute in any way communications between you and the Permittee or any other county, state, federal, or local agency about the Permits; applications, review, and/or approval of the Permits; Site; and/or Project.

Petitioners' Br. at 24 (quoting Request for Production at 6-7, ¶¶ 1 and 14, R.R. at 33a-34a); *see also* R.R. at 3a-5a.

Moreover, Petitioners maintain that they are entitled to proceed *nunc pro tunc* because their counsel made "diligent and reasonable efforts to discover the [Approval Notice]" by "routinely" searching the *Bulletin* using some iteration of "Bivouac Sow Farm." Petitioners' Br. at 25-26 (insisting that "negligence is not the failure to use *every possible* search method"). Further, Petitioners contend that omitting the name "Country View Family Farms" from their search did not constitute negligence, as the search results would have included the farm's "many operations throughout the Commonwealth." *Id.* at 26.[11]

DEP, the State Conservation Commission, and the Conservation District (Respondents) counter that the Board did not err in denying Petitioners' request for leave to appeal *nunc pro tunc*, as the *Bulletin* notice was adequate, Petitioners' own negligence was the cause of their tardy appeal, and the Commonwealth was not obligated to notify Petitioners of the nutrient management plan approval. For the following reasons, we agree with Respondents that the Board did not err in denying Petitioners *nunc pro tunc* relief.

### III. Discussion

"[I]n this Commonwealth, an appeal [deadline] cannot be extended as a matter of grace or mere indulgence." *Union Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Rev. of Allegheny Cnty.*, 746 A.2d 581, 583 (Pa. 2000) (citation omitted). "The Board upon written request and for good cause shown may

---

[11] Petitioners also alleged in their Petition that "[a] search under the term 'Country View Family Farms' finds various sites in various counties operated by [Country View] in the Commonwealth," but that "it does not find the proposed [nutrient management plans] or [nutrient management plan] approvals for 2014, 2016 or 2019." R.R. at 7a. In its Granting Opinion, the Board noted that the name "County View Family Farms, LLC" was first included in April 2022 in the renewal application notice for the nutrient management plan. *Id.* at 314a.

grant leave for the filing of an appeal *nunc pro tunc*[.]" 25 Pa. Code § 1021.53a(a).[12] However, "[i]t is well-settled that the burden of demonstrating the necessity of *nunc pro tunc* relief is on the party seeking to file the appeal, and the burden is a heavy one." *Harris v. Unemployment Comp. Bd. of Rev.*, 247 A.3d 1223, 1229 (Pa. Cmwlth. 2021) (citations omitted).

Establishing entitlement to pursue a tardy appeal *nunc pro tunc* requires proving:

> (1) that extraordinary circumstances, involving fraud or breakdown in the administrative process or non-negligent circumstances related to the party, its counsel or a third party[] caused the untimeliness; 2) that it filed the document within a short time period after the deadline or date that it learned of the untimeliness;[13] and 3) that the respondent will not suffer prejudice due to the delay.

---

[12] The Board's regulations further require that

> [t]he petition to appeal *nunc pro tunc* . . . shall include . . . [a] sworn affidavit of the person or persons having knowledge of the facts that the facts are verified as true and correct, or an unsworn written statement of the person or persons, that the facts are verified as true and correct subject to the penalties for unsworn falsification to authorities, under [Section 4904 of the Crimes Code,] 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities).

25 Pa. Code § 1021.53a(c)(5). We note that the record contains no such affidavit or unsworn written statement pursuant to Section 4904 of the Crimes Code, 18 Pa.C.S. § 4904, in support of the Petition. *See id.*

"If the petition to appeal *nunc pro tunc* is denied, the notice of appeal will be dismissed as untimely." 25 Pa. Code § 1021.53a(i).

[13] We note that it is not evident from the record whether Petitioners have to date actually filed the appeal which they seek leave to pursue *nunc pro tunc*, as it appears in neither the certified record nor this Court's internal case management system. *See Bureau Veritas N. Am., Inc. v. Dep't of Transp.*, 127 A.3d 871, 879 (Pa. Cmwlth. 2015) (explaining that establishing entitlement to

10

*Bureau Veritas N. Am., Inc. v. Dep't of Transp.*, 127 A.3d 871, 879 (Pa. Cmwlth. 2015) (citations omitted). An administrative breakdown occurs when "an administrative board or body is negligent, acts improperly or unintentionally misleads a party." *Union Elec.*, 746 A.2d at 584. "The exception for allowance of an appeal *nunc pro tunc* in non-negligent circumstances is meant to apply only in unique and compelling cases in which the appellant has clearly established she attempted to file an appeal, but unforeseeable and unavoidable events precluded her from actually doing so." *Criss v. Wise*, 781 A.2d 1156, 1160 (Pa. 2001) (holding that "delays in the U.S. mail are both foreseeable and avoidable," such that "[a]ppellee's failure to anticipate a potential delay in the mail was not such a non-negligent circumstance for which an appeal *nunc pro tunc* may be granted"); *cf. Cook v. Unemployment Comp. Bd. of Rev.*, 671 A.2d 1130, 1132 (Pa. 1996) (concluding that appellant's sudden hospitalization constituted a non-negligent circumstance justifying *nunc pro tunc* relief).

Here, Petitioners assert that an administrative breakdown justifying *nunc pro tunc* relief occurred when DEP omitted the name "Bivouac Sow Farm," or some variation thereof, from the Approval Notice, thereby eliminating the notice from the results yielded by Petitioners' keyword search of the *Bulletin* based on the

---

appeal *nunc pro tunc* requires demonstrating, *inter alia*, that the party "*filed the document* within a short time period after the deadline or date that it learned of the untimeliness") (emphasis added). Further, we observe Petitioners' statement in their Petition that they "[sought] to file [their] . . . [a]ppeal within 30 days of receiving actual notice . . . on August 2, 2022, or 15 days after [] an order from [the] Board approving the filing, whichever is later." R.R. at 10a; *see also* Pet. for Rev., 10/25/22 at 9 (requesting that this Court "direct the [Board] to grant Petitioners' Petition . . . and docket [their] appeal [from] the DEP's approval of the [n]utrient [m]anagement [p]lan for the Bivouac Sow Farm facility").

11

name of that particular operation. *See* Petitioners' Br. at 17, 20 & 23. This argument is devoid of merit.

In *Delaware Riverkeeper Network v. Department of Environmental Protection* (Pa. Cmwlth., No. 1571 C.D. 2017, filed Aug. 1, 2018),[14] we reviewed the Board's denial of a petition for leave to appeal *nunc pro tunc* from DEP's approval of a water quality certification application. *Del. Riverkeeper*, slip op. at 5. There, the approval notice published by DEP in the *Bulletin* contained the deadline to appeal to federal court, but omitted mention of the right of appeal to the Board. *Id.*, slip op. at 5-6. More than six months following the lapse of the administrative appeal window, two parties petitioned the Board for leave to appeal the water quality certification approval *nunc pro tunc*. *Id.*, slip op. at 6. As in the present matter, the petitioners contended that DEP's omission deviated from the language contained in prior approval notices in the *Bulletin* and thereby contributed to their tardy appeal to the Board. *Id.* Thus, the petitioners maintained that DEP's publication of the purportedly misleading and incomplete approval notice constituted an administrative breakdown justifying *nunc pro tunc* relief. *Id.*, slip op. at 8.

The Board denied petitioners' request. *Del. Riverkeeper*, slip op. at 12. This Court affirmed, reasoning that the petitioners "possess[ed] considerable knowledge and experience regarding challenges to DEP approvals of such applications, by virtue of [their] conduct and involvement in other, similar matters, thereby diminishing the likelihood that [they] were actually misled by the allegedly incomplete information in the DEP's February 25, 2017 notice." *Id.*, slip op. at 18-19. Thus, we held that the Board did not abuse its discretion in determining that the

---

[14] Unreported memorandum opinions of this Court issued after January 15, 2008 may be cited for their persuasive value. *See* Section 414(a) of this Court's Internal Operating Procedures 210 Pa. Code § 69.414(a).

petitioners "failed to establish 'good cause' to permit the filing of an appeal *nunc pro tunc* with the [Board]" and, further, that the petitioners did not "act[] diligently to preserve their appellate rights." *Id.*, slip op. at 13 & 18-19 (citing 25 Pa. Code § 1021.53a).

Likewise, here, Petitioners' "considerable knowledge and experience" litigating similar matters undermines their contention that they were misled by DEP's omission from the Approval Notice. *See Del. Riverkeeper*, slip op. at 18-19; *see also* R.R. at 3a-6a (Petitioners' averments in the Petition summarizing their appeals from 2014, 2016 and 2019 renewed nutrient management plan approvals obtained by Country View). We acknowledge the Board's statement in the Granting Opinion that

> the six times the facility was listed in the [] *Bulletin* from 2014 through 2019 the only term used was the "Bivouac Sow Farm" (which was the search term employed by [Petitioners]). Even the renewal application notice for the nutrient management plan in April 2022 still included a reference to Bivouac Sow Farm (*but for the first time also referenced Country View . . .* ).

R.R. at 314a (emphasis added). However, Petitioners averred in their Petition that Country View submitted the 2014, 2016, and 2019 nutrient management plans, which they also challenged and which are the subject of related, consolidated litigation. *See* R.R. at 3a-5a, 8a & 109a.[15] Thus, even if, as indicated by the Board, the name "Country View" did not appear in the *Bulletin* in connection with the 2014,

---

[15] In its response to the Petition, Country View noted that its "full name, 'Country View Family Farms, LLC,' appears in the case caption in each of those proceedings," which were subsequently consolidated before the Board. R.R. at 114a.

2016, and 2019 nutrient management plan application and approval notices, Petitioners concede awareness of Country View's involvement with those nutrient management plans and, consequently, at least constructive awareness that the name "Country View Family Farms, LLC" was a viable search term. *See id.* at 3a & 6a (describing Country View's 2022 nutrient management plan application as "another proposed renewal" of the nutrient management plan project for the concentrated animal feeding operation referred to as "Bivouac Sow Farm"). Moreover, Petitioners stated in their Petition that the proposed 2022 nutrient management plan application notice contained both the names "Country View Family Farms, LLC" and "Bivouac Sow Farm, LLC." *Id.* at 6a. Petitioners were, therefore, aware of the probability that Country View likely would appear again as the operator in the Approval Notice and could have searched the *Bulletin* using this name. Thus, the prudence of including Country View as a search term was evident. *See Criss v. Wise*, 781 A.2d 1156, 1160 (Pa. 2001) ("The exception for allowance of an appeal *nunc pro tunc* in non-negligent circumstances is meant to apply only in unique and compelling cases in which the appellant has clearly established that she attempted to file an appeal, *but unforeseeable and unavoidable events precluded her from actually doing so*.") (emphasis added).[16]

---

[16] As noted above, Section 517 of the Agriculture Code provides that "[a]ny person aggrieved by an order or other administrative action of the [State Conservation C]omission issued pursuant to this chapter shall have the right, within 30 days from actual *or constructive* notice of the action, to appeal the action to the . . . Board." 3 Pa.C.S. § 517 (emphasis added). Black's Law Dictionary defines the term "constructive notice" as "[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of, such as a registered deed or a pending lawsuit; notice presumed by law to have been acquired by a person and thus imputed to that person." *Notice*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, DEP's publication of the Approval Notice in the *Bulletin* arguably placed Petitioners on constructive notice of the Conservation District's action.

14

Petitioners maintain that entering the name "Country View Family Farms" in their search for the Approval Notice would have yielded numerous results including the farm's "many operations throughout the Commonwealth." Petitioners' Br. at 26. However, as noted above, the Board observed in its Denying Opinion "that a search for the term "Country View" yields exactly one result in the April 2 notice of the application for the nutrient management plan and one result in the June 25 notice of approval of the nutrient management plan, [*i.e.*, the Approval Notice]." R.R. at 310a. As pointed out by the Board, "even if . . . [one were to] utilize[] . . . Petitioners' method of searching instead of reading the *Bulletin*, simply using a portion of the name of the permittee easily locates the notice." Moreover, in the Granting Opinion, the Granting ALJs, one of whom was the Board chairman, pointed out that "[s]imply reading the 'hard copy' [] *Bulletin*, which lawyers have done for decades, rather than conducting a word search, would have revealed the issuance of the plan." *Id.* at 314a. The Board further emphasized in the Granting Opinion that "a more robust word search would have likely brought the notice to [Petitioners'] attention." *Id.* The Denying ALJs also emphasized that "Petitioners' own choice of using limited search terms and not actually reading the *Bulletin*" did not provide the type of "unique and compelling circumstances" necessary to justify granting *nunc pro tunc* relief. *Id.* at 310a & 312a. We agree with the reasoning of the Denying ALJs and, to an extent, the Granting ALJs. *See Del. Riverkeeper*, slip op. at 6, 13 & 18-19 (citing 25 Pa. Code § 1021.53a) (holding that the Board did not abuse its discretion in determining that DEP's omission from an appeal notice published in the *Bulletin* did not mislead the petitioners and, further, that the petitioners did not "act[] diligently to preserve their appellate rights"; thus, the petitioners "failed to establish 'good cause' to permit the filing of an appeal *nunc*

15

*pro tunc* with the [Board]"); *cf. Cal. Univ. of Pa. v. Zoning Hearing Bd. of Borough of Cal.*, 107 A.3d 241, 242-46 (Pa. Cmwlth. 2014) (vacating the trial court's dismissal of the university's untimely appeal and remanding to the trial court to render further factual findings relevant to whether the university was entitled to *nunc pro tunc* relief, holding that a breakdown in the judicial process occurred when the zoning hearing board erroneously informed the university that the appeal window extended 30 days from the date of receipt of the disputed decision, rather than the mailing date); *Dep't of Transp., Bureau of Traffic Safety v. Moore*, 554 A.2d 130, 131-32 (Pa. Cmwlth. 1988) ("agree[ing] with the trial court that incorrect information given to the appellee by the district [judge constituted] sufficient reason to permit an appeal *nunc pro tunc*).[17]

## IV. Conclusion

For the foregoing reasons, we agree with the Board that Petitioners failed to satisfy the heavy burden of demonstrating "extraordinary circumstances," including "fraud or a breakdown in the administrative process or non-negligent circumstances related to the party, its counsel or a third party[]" sufficient to justify

---

[17] As Petitioners failed to satisfy the first requirement for establishing entitlement to appeal *nunc pro tunc*, we need not discuss the remaining factors. *See Feudale v. Dep't of Env't Prot.* (Pa. Cmwlth., No. 1905 C.D. 2016, filed July 17, 2017), slip op. at 8 ("Given that [petitioner] has not met the first requirement for an appeal *nunc pro tunc*, we must conclude that the Board did not err in denying his petition to appeal *nunc pro tunc*.").

16

*nunc pro tunc* relief.  *See Harris*, 247 A.3d at 1229; *Bureau Veritas*, 127 A.3d at 879; *Union Elec.*, 746 A.2d at 584.  Accordingly, we affirm.


_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marjorie Hudson, David Lippert,    :
and James H. Mellott,    :
               Petitioners    :
   :
   :
        v.    :
   :
Department of Environmental    :
Protection (Environmental Hearing    :
Board),    :   No. 1153 C.D. 2022
            Respondent    :

# O R D E R

AND NOW, this 16th day of November, 2023, the September 27, 2022 order of the Department of Environmental Protection, Environmental Hearing Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marjorie Hudson, David Lippert, and :
James H. Mellott, :
                    Petitioners :
          v.                    : No. 1153 C.D. 2022
                                : Argued: September 11, 2023
Department of Environmental     :
Protection (Environmental Hearing :
Board),                         :
                    Respondent :


BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE WALLACE                          FILED: November 16, 2023


        Due to Petitioners' history in this matter, I respectfully dissent. Petitioners reside near a planned concentrated animal feeding operation located in Big Tannery, Pennsylvania (Project), that is operated by Country View Family Farms, LLC (Country View). Petitioners have consistently opposed the Project by appealing at least nine permits and approvals for the Project over a span of eight years. Reproduced Record (R.R.) at 304a. Petitioners are still actively litigating these nine other appeals, which have been consolidated before the Department of Environmental Protection's (DEP) Environmental Hearing Board (Board). *Id.* In

his Opinion in Support of Granting Petition for Leave to File Appeal *Nunc Pro Tunc*, Administrative Law Judge (ALJ) Thomas W. Renwand noted:

> A review of the docket shows that the parties have worked closely together for years. Indeed, many of the status reports and proposed Orders, which were all adopted by the Board, provided that [Petitioners] would be given notice when the Department [of Environmental Protection] was going to modify the [existing permits].

*Id*. at 314a.

Petitioners assert that before June of 2022, every notice (18 in total) in the *Pennsylvania Bulletin* (*Bulletin*) related to the Project referenced some iteration of "Bivouac Sow Farm." *See* Petitioners' Br. at 7-9. When Country View submitted its most recent nutrient management plan application (the 2022 NMP application) to the Conservation District, notice of the 2022 NMP application was published in the *Bulletin* with the following description:

> Country View
> Family Farms, LLC
> **Bivouac Sow Farm**
> 15197 Great Cove Rd
> Big Cove Tannery, PA 17212

R.R. at 307a (emphasis added). After the Conservation District approved the 2022 NMP application, the notice (2022 NMP approval notice), which DEP published in the *Bulletin* on June 25, 2022, omitted "Bivouac Sow Farm" and included only the following description:

> Country View
> Family Farms, LLC
> 15197 Great Cove Tannery
> Big Cove Tannery, PA 17212

*Id.* at 307a-08a.

Petitioners assert they were continuously searching the *Bulletin* for "Bivouac" and "Bivouac Sow Farm" while awaiting a final decision on the 2022 NMP application, just as they had routinely done for other applications over the years, but their searches did not produce the 2022 NMP approval notice. *See* Petition for Review at 5. As a result, Petitioners missed both the 2022 NMP approval notice in the *Bulletin* and their appeal deadline. Petitioners first discovered the 2022 NMP approval notice during a conference call on their related, consolidated appeals. R.R. at 307a. Petitioners then filed a Petition for Leave to File Appeal *Nunc Pro Tunc* on August 8, 2022, approximately two weeks after the 30-day appeal period expired. *Id*. at 305a.

"It is well-settled that the burden of demonstrating the necessity of *nunc pro tunc* relief is on the party seeking to file the appeal, and the burden is a heavy one." *Harris v. Unemployment Comp. Bd. of Rev.*, 247 A.3d 1223, 1229 (Pa. Cmwlth. 2021) (citations omitted). To carry its burden, the party requesting to file an appeal *nunc pro tunc* must show:

> 1) that extraordinary circumstances, involving fraud or breakdown in the administrative process or non-negligent circumstances related to the party, its counsel or a third party, caused the untimeliness; 2) that it filed the document within a short time period after the deadline or date that it learned of the untimeliness; and 3) that the respondent will not suffer prejudice due to the delay.

*Bureau Veritas N. Am., Inc. v. Dep't of Transp.*, 127 A.3d 871, 879 (Pa. Cmwlth. 2015) (citations omitted).

The Majority determines Petitioners' argument that DEP's omission of "Bivouac Sow Farm," or some iteration thereof, from the 2022 NMP approval notice was an administrative breakdown justifying *nunc pro tunc* relief "is devoid of merit."

SW - 3

*See Hudson v. Dep't of Env't Prot. (Env't Hearing Bd.)* (Pa. Cmwlth., No. 1153 C.D. 2022, filed November 16, 2023), slip op. at 11. I disagree.

First, I believe the Board committed an error of law in only looking at its own actions when determining whether there was a breakdown in the administrative process. Our inquiry in determining whether there are extraordinary circumstances involving fraud or a breakdown in the administrative process is whether "an administrative board or body is negligent, acts improperly or unintentionally misleads a party." *Union Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Rev. of Allegheny Cnty.*, 746 A.2d 581, 584 (Pa. 2000). The two ALJs who endorsed an Opinion in Support of Denying Petition for Leave to File Appeal *Nunc Pro Tunc* (Denying ALJs) focused solely on the Board's actions and determined the omission in the *Bulletin* could not be a breakdown in the Board's administrative process because DEP, not the Board, published the notice.

In *Union Electric*, a county board of property assessment, appeals, and review (county board) issued an order extending the time for filing tax assessment appeals from February 29 to April 1. *Union Electric*, 746 A.2d at 582. The appellants, who were landowners, filed tax assessment appeals in late March. *Id.* The county board heard the appeals and issued decisions, which the appellants appealed to the court of common pleas. *Id.* at 582-83. The local school district filed a motion to quash the appeals, arguing the statutory time limit for filing a tax assessment appeal was February 29th and the county board did not have legal authority to extend the deadline. *Id.* at 583. The appellants argued they were entitled to appellate rights *nunc pro tunc* because the county board's unauthorized extension was tantamount to a breakdown in the court's operations. *Id.*

SW - 4

In *Union Electric*, the Pennsylvania Supreme Court reinstated the appellants' right to appeal *nunc pro tunc* after reviewing relevant case law and noting:

> A careful reading of these cases demonstrates that there is a breakdown in the court's operations where an administrative board or body is negligent, acts improperly or unintentionally misleads a party. Thus, where an administrative body acts negligently, improperly or in a misleading way, an appeal *nunc pro tunc* may be warranted.

*Union Electric*, 746 A.2d at 584. The Court concluded "the [county board's] negligent action in extending the filing deadline constitutes a breakdown in the court's operations such that [the appellants'] appeals should be permitted *nunc pro tunc*." *Id.* (emphasis added). Thus, the Supreme Court considered the county board's actions and did not limit its inquiry to whether the adjudicating body's (the trial court's) own operations constituted an administrative breakdown.

Similarly, the Board should not have restricted its inquiry to only whether there was an administrative breakdown in its own processes. DEP, which is an administrative body, published the 2022 NMP application and approval notices in the Bulletin. In publishing the 2022 NMP approval notice, DEP did not include "Bivouac Sow Farm," breaking from its customary practice over the last eight years. Although DEP's omission was most likely unintentional, it misled Petitioners. In addition, while DEP is not the Board, DEP's omission of "Bivouac Sow Farm" in the 2022 NMP approval notice qualifies as a breakdown in the administrative process. *See Union Electric*, 746 A.2d at 584.

Second, I do not believe *The Delaware Riverkeeper Network v. Department of Environmental Protection* (Pa. Cmwlth., No. 1571 C.D. 2017, filed August 1, 2018), carries the day here. *The Delaware Riverkeeper Network* involved DEP's publication of notice of an approval of a water quality certification application in the

*Bulletin*. *Id.*, slip op. at 5. The notice explained that any aggrieved party could file a petition for review with the United States Court of Appeals for the Third Circuit. *Id.*, slip op. at 5-6. In seeking to file a late appeal *nunc pro tunc*, the petitioners argued DEP's notice misled them because it failed to mention their obligation to also file an appeal with the Board. *Id.*, slip op. at 6. The petitioners did not, however, argue they had not received notice of the action taken by DEP, i.e., the approval of the water quality certification.

Unlike the petitioners in *The Delaware Riverkeeper Network*, Petitioners here are arguing that they did not receive notice of the action taken by the Board, i.e., the 2022 NMP approval notice. As a result, unlike the petitioners in *The Delaware Riverkeeper Network* who were only arguing they had good cause to appeal *nunc pro tunc* due to being misled about their appeal rights, Petitioners' arguments implicate their constitutional due process rights. *See Harvilchuck v. Dep't of Env't Prot.*, 117 A.3d 368, 372 (Pa. Cmwlth. 2015) ("'[c]onstitutionally adequate notice of administrative action is notice which is reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'") (citation omitted).

Third, a proper *nunc pro tunc* inquiry must focus on the specific party requesting *nunc pro tunc* relief and whether the administrative board or body, even if unintentionally, misled the party which, in turn, caused the untimeliness. To the extent *The Delaware Riverkeeper Network* provides guidance for the present case, it supports this position. *The Delaware Riverkeeper Network* Court explained:

> Moreover, as the EHB noted in its opinion, Riverkeeper possess considerable knowledge and experience regarding challenges to DEP approvals of such applications, by virtue of Riverkeeper's conduct and involvement in other, similar matters, thereby diminishing the

likelihood that Riverkeeper were actually misled by the allegedly incomplete information in the DEP's . . . notice.

*The Delaware Riverkeeper Network*, slip op. at 18. Thus, in *The Delaware Riverkeeper Network*, we examined the petitioners' past experience and knowledge to determine that the petitioners did not actually rely upon DEP's notice, i.e., the petitioners were not actually misled by the notice. *Id.*, slip op. at 18-19.

While I agree with the Denying ALJs that the 2022 NMP approval notice "contained sufficient information for an ordinary person to determine they may be affected by the approval," R.R. at 309a, that is not the proper inquiry. If this was Petitioners' first involvement with this matter, I would agree with the Denying ALJs and the Majority. The Petitioners, however, have searched the Bulletin for "Bivouac" and "Bivouac Sow Farm" successfully for over one-half of a decade. In addition, the 2022 NMP application notice included "Bivouac Sow Farm." As a result, Petitioners should not be harmed for expecting to locate the 2022 NMP approval notice by utilizing the search terms they had always used. Therefore, I would conclude the 2022 NMP approval notice's lack of "Bivouac Sow Farm" constitutes an extraordinary circumstance involving a breakdown in the administrative process which caused the Petitioners' untimeliness.

In addition to showing their untimeliness was the result of extraordinary circumstances, Petitioners had the burden of showing (i) they filed their petition within a short time after the deadline or the date they learned of the untimeliness, and (ii) the respondents will not suffer prejudice due to the delay. *See Bureau Veritas*, 127 A.3d at 879. The Denying ALJs did not reach these issues, because they determined Petitioners had not carried their burden of establishing extraordinary circumstances justifying a *nunc pro tunc* appeal. The Board's ALJs who voted in favor of granting Petitioners' request, while opining *nunc pro tunc*

relief was appropriate, did not specifically address these issues in their opinion. As a result, I do not believe the Board made sufficient findings of fact and conclusions of law for this Court to complete our appellate review. Therefore, I would reverse and remand this matter to the Board for consideration of the final two *nunc pro tunc* factors. *See Bureau Veritas*, 127 A.3d at 879.

_____
STACY WALLACE, Judge